PUBLIC FUNDS FOR PUBLIC SCHOOLS OF NEW JERSEY, American Civil Liberties Union of New Jersey, Inc., Americans for Democratic Action, New Jersey Region of American Jewish Congress, Americans United for Separation of Church and State, Trenton Area Chapter of Americans United for Separation of Church and State, Ethical Culture Society of Bergen County, National Council of Jewish Women, New Jersey Congress of Parents and Teachers, New Jersey Education Association, Society of Separationists, New Jersey Chapter, Teaneck Citizens for Public Schools, Union of American Hebrew Congregations, Gilbert S. Barnes, Linda B. Cappelson, Fred E. Clever, Susan P. Coen, Warren D. Cummings, Rita D'Joseph, John H. Ford, Ruth D. Glick, David Goldberg, Lawrence Haas, John C. Hazen, Alexander H. Holman, John Pintard Horchner, W. Clifford Jones, Merle H. Kalishman, Judith S. Knee, Libby B. Korenstein, Wendy F. Korenstein, Jo Kotula, Phyllis A. Minch, Edna B. Norris, Allan S. Olsen, Donald C. Osborne, Rose Paull, Penny Pistilli, Dorothy Belle Pollack, Raymond J. Pontier, Evan C. Richardson, Alex Rosen, Donald R. Simon, Marcia Smith, Peter E. Stokes, Nathan Tamarin, Harry F. Ungar, Manya S. Ungar, Arthur W. Weld, Elizabeth Wintermute, William Withers, Nancy Duffy, Arthur Knudsen and George W. Soper, Plaintiffs,

v.

Brendan T. BYRNE, Governor of the State of New Jersey, Sidney Glaser, Director of Taxation of the State of New Jersey, and Dr. Fred G. Burke, Commissioner of Education of the State of New Jersey, Defendants.

Civ. A. No. 77–139.

United States District Court,
D. New Jersey.

Feb. 1, 1978.

Samuel M. Koenigsberg, Montclair, N. J., Leo Pfeffer, New York City, for plaintiffs.

James P. Beggans, Jr., pro se.

Stockman, Mancino, Marinari, Smithson & O'Donnell by Maria Marinari Sypek, Trenton, N. J., for defendant General Assembly.

William F. Hyland, Atty. Gen. of N. J. by Mark Schorr, Deputy Atty. Gen., Trenton, N. J., for defendants Byrne and State of N. J.

## OPINION

MEANOR, District Judge.

This case presents a slightly different facet of the recurring problem engendered by legislative attempts to provide a tax benefit to the parents of children who attend private rather than public schools at the elementary and secondary level. The issue arises upon plaintiffs' challenge [1] to the constitutionality of N.J.S.A. 54A:3–1(b)2 which provides that under New Jersey's income tax law a taxpayer who has a dependent child attending a non-public elementary or secondary school on a full time basis may for each such child have a personal deduction of $1,000 against gross income.[2]

When this case was called for trial no testimony was presented, all parties agreeing to submit the case on the record as it stood. The facts essential to decision are, therefore, undisputed. Defendants and the intervening defendant [3] admit that there are 753 non-public schools in New Jersey of which 714 are religiously affiliated. Of the latter, 575 or 80% are Catholic.[4] Since it safely may be assumed that an overwhelming majority of New Jersey children who attend non-public schools attend such schools within New Jersey, it is clear that

---

1. No question of standing has been raised. See *Public Funds for Public Schools of N. J. v. Marberger,* 358 F.Supp. 29, 31–32 (D.N.J.1973), *affirmed sub nom., Marberger v. Public Funds for Public Schools of New Jersey,* 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134 (1974).

2. N.J.S.A. 54A:3–1 provides in pertinent part as follows:

    Each taxpayer shall be allowed personal exemptions and deductions against his gross income as follows:

    \*  \*  \*  \*  \*  \*

    (b) . . .

    .  .  .  .  .

    2. For each dependent who qualifies as a dependent of the taxpayer during the taxable year for Federal income tax purposes— $1,000.00 *plus, for each dependent child attending on a full-time basis an elementary or secondary educational institution not deriving its primary support from public moneys —$1,000.00.*

(Emphasis added.) Plaintiffs attack only the italicized portion of the statute.

3. The intervening defendant, James P. Beggans, Jr., is a member of the New Jersey bar, a taxpayer and the father of three children attending a parochial school.

4. An exhibit to the brief of defendants Brendan Byrne, Governor of New Jersey, Sidney Glaser, Director of Taxation of New Jersey and Fred G. Burke, Commissioner of Education of New Jersey, states that of the 753 non-public schools in New Jersey their affiliations are as follows:

| | |
|---|---|
| Catholic | 575 |
| Lutheran | 8 |
| Jewish | 20 |
| Episcopalian | 3 |
| Christian | 48 |
| Independent | 39 |
| Other Denominations | 60 |

only a few such children attend a school that is not religiously affiliated.[5]

■ The parties are in agreement that the Supreme Court has formulated a three-part test to be used in the determination whether a statute violates the establishment clause.[6] In order for a statute to be upheld against an establishment clause attack it must satisfy three conditions: (1) it must have a secular legislative purpose; (2) its principal or primary effect must be one that neither advances nor inhibits religion, and (3) it must not foster an excessive government entanglement with religion.[7] In light of *Committee for Public Education v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973), plaintiffs concede that this court must find that the New Jersey statute in question here has a secular legislative purpose, although they raise the issue in order to preserve it in the event of Supreme Court review.

In their challenge to the statute, plaintiffs rely primarily on *Nyquist, supra,* and argue that that case alone requires the relief they seek. The issues resolved in *Nyquist* that are relevant here dealt with a tuition grant program and a tax benefit program. The New York statute there under review provided a tuition reimbursement for parents of elementary and secondary school children who attended non-public schools. If the parent had an annual taxable income of less than $5,000, the parent could receive a tuition reimbursement of up to $50 for each elementary school child and up to $100 for each secondary school student. The statute also provided for tax relief for those who did not qualify for tuition reimbursement. The law provided that taxpayers who had dependent children attending non-public elementary and sec-

ondary schools could subtract from their gross income a defined amount for each such child, but deductions were allowed for no more than three children. It was also provided that as the taxpayer's income increased, the amount permitted to be subtracted decreased. For example, if adjusted gross income was less than $9,000, the amount to be subtracted was $1,000; if income was between $15,000 and $16,999, only $400 could be subtracted, and if income were $25,000 or more, no subtraction could take place.

The Supreme Court invalidated the tuition reimbursement program[8] and then turned its attention to the tax benefit features of the New York statute. The Court began its discussion by noting that the parties had engaged in a dispute "over what label best fits the New York law." 413 U.S. at 789, 93 S.Ct. at 2974. The appellants maintained that the law provided for tax credit. The State claimed that it was a system of income tax modifications and the Solicitor General, appearing amicus, referred to the statute as providing for income tax deductions.

The Court pointed out that while in effect the scheme was like a tax credit, it was in form a tax deduction. The Court then said, "We see no reason to select one label over another, as the constitutionality of this hybrid benefit does not turn in any event on the label we accord it." 413 U.S. at 789, 93 S.Ct. at 2974.

The Court then went on to say that there was no practical difference between the tuition reimbursement program it had already invalidated and the tax benefit allowances. Under either plan a qualifying parent had the same motivation and reward

---

**5.** The statute in question does not require the payment of tuition or attendance within the state as a pre-condition to the deduction.

**6.** The first amendment provides in pertinent part:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .

Through the due process clause of the fourteenth amendment of the first amendment has

been made applicable to the states. *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

**7.** *Lemon v. Kurtzman,* 403 U.S. 602, 612–613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

**8.** In *Sloan v. Lemon,* 413 U.S. 825, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973), a companion case to *Nyquist,* the Court also invalidated a Pennsylvania tuition reimbursement program.

for sending his child to a non-public school. Only the form in which the financial gain came to the parent was different. Under the tuition reimbursement program, a cash payment was received while under the tax benefit plan the amount of taxable income and, hence, the amount of tax owed, were reduced. The Court ultimately held that ". . . insofar as such benefits render assistance to parents who send their children to sectarian schools, their purpose and inevitable effect are to aid and advance those religious institutions." 413 U.S. at 793, 93 S.Ct. at 2976.

■ I see no distinction of constitutional moment between the income tax deduction provided in the statute under attack here and the tax benefit program invalidated in *Nyquist.* In both cases the parent taxpayer receives a financial reward from the state for sending his child to a non-public school. Since the vast majority of those schools in New Jersey are religiously affiliated it follows that this income tax reduction provision has the direct effect of aiding religion and is, under *Nyquist,* in violation of the establishment clause.[9]

■ It is also my opinion that as well as violating the "effect" or second part of the three-part test, the New Jersey statute at issue also violates the "entanglement" or third prong of the test. In *Nyquist,* the Court observed that had the statute remained viable there undoubtedly would have been continuing pressure to enlarge its benefits.[10] One need not be clairvoyant to know that if this New Jersey statute continues there will be increasing pressure to enhance it. This would enmesh New Jersey in continuing political strife over aid to religion, thereby engaging the government of New Jersey in excessive entanglement with religion. *See Nyquist, supra,* 413 U.S. 794–798, 93 S.Ct. 2955.[11]

Great emphasis has been placed by defendants upon *Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 699 (1970) in which property tax exemptions for religious organizations withstood an establishment clause attack. I need not discuss this argument at length. *Walz* was also relied upon by the appellees in *Nyquist* and was thoroughly distinguished by Mr. Justice Powell's opinion for the majority. Since I have found that *Nyquist* is controlling here, obviously *Walz* can be of no aid to the defendants.

The plaintiffs seek both declaratory and injunctive relief, and have raised a question concerning the scope of that relief. Plaintiffs do not contend that the statute would

---

9. I recognize that defendants claim that the question whether a tax deduction such as New Jersey provides passes constitutional muster was expressly reserved in *Nyquist.* 413 U.S. 791, n. 49, 93 S.Ct. at 2974. I do not agree. The Court was there reserving the constitutionality of what it called "genuine tax deduction, such as for charitable contributions." New Jersey's deduction is not a true tax deduction. The amount that may be subtracted from gross income need not bear any relation to the tuition paid. Indeed, it is available if no tuition is paid—e. g., the student is on a scholarship. Hence, what is presented is not a true tax deduction but the use of the tax laws to provide a financial incentive for parents to send their children to a non-public school. This falls squarely within the ban of *Nyquist.*

10. One of the arguments made is that the tax benefits are so small that the financial advantage is of no real significance. The brief of defendants Byrne, Glaser and Burke points out that the tax rate is 2% for taxable income up to $20,000, and for income over $20,000 the tax liability is $400 plus 2.5% of the excess over

$20,000. Thus, for example, a taxpayer with a taxable income of $20,000 would have his tax liability reduced by $20 for each dependent child attending a non-public elementary or secondary school. In my judgment, the amount of the benefit is irrelevant. Government may not aid religion—it is not that government may aid religion only a little bit.

11. Since *Nyquist,* the Court by summary affirmance invalidated a California non-public school tuition tax credit plan. *Franchise Tax Board v. United Americans for Public Schools,* 419 U.S. 890, 95 S.Ct. 166, 42 L.Ed.2d 135 (1974) (not reported below), and a similar Ohio program. *Grit v. Wolman,* 413 U.S. 901, 93 S.Ct. 3062, 37 L.Ed.2d 1021 (1973), *affirming Kosydar v. Wolman,* 353 F.Supp. 744 (S.D. Ohio 1972). Also, the Minnesota Supreme Court held invalid the same type of plan on federal constitutional grounds. *Minnesota Civil Liberties Union v. State,* 302 Minn. 216, 224 N.W.2d 344 (1974), *cert. den.,* 421 U.S. 988, 95 S.Ct. 1991, 44 L.Ed.2d 477 (1975).

be unconstitutional if it permitted the deduction only to parents whose children attended a private non-sectarian school. And plaintiffs appear unconcerned whether that section of the statute they attack is stricken entirely or whether the statute is restricted in its effect so as to eliminate any deduction to parents of children who attend religiously affiliated private schools.[12] The defendants take the position that the statute cannot be so severed and that if the clause under attack is unconstitutional with regard to attendance of a taxpayer's dependent child in a sectarian school, then the relief must be to deny the deduction altogether and not to preserve it for those parents whose children attend a non-sectarian private school.

Since severability is a question of legislative intent,[13] it seems clear that defendants are correct in their position that the legislature would not wish to retain the deduction with respect to attendance solely at non-sectarian schools. In view of the fact that the overwhelming majority of beneficiaries of the statute as written would be parents of children attending religiously affiliated primary and secondary schools, it is extremely unlikely that the New Jersey legislature would have provided this deduction only for the parents of that comparatively small number of children who attend non-sectarian private schools. *Sloan v. Lemon,* 413 U.S. 825, 833–834, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973).

For the reasons set forth in this opinion, plaintiffs are entitled to a declaratory judgment that that portion of N.J.S.A. 54A:3–1 italicized in footnote 2 of this opinion is unconstitutional in violation of the establishment clause of the first amendment. Plaintiffs are also entitled to a permanent injunction against defendant Glaser restraining him from permitting any taxpayer to take the income tax deduction held unconstitutional in this opinion for taxable years ending in 1977 and successive years.[14] Injunctive relief is not appropriate as to any other defendant.[15]

Plaintiffs shall present a judgment in conformity with this opinion as soon as possible with consent to the form thereof if attainable. If consent to the form of the proposed judgment cannot be had, plaintiffs may move to settle the form of the order on 24 hours' notice, and such a motion shall be returnable before me any non-holiday morning at 9:30.

**12.** The New Jersey Gross Income Tax Act, 54A:1–1 *et seq.* (1976) contains the usual severability clause. N.J.S.A. 54A:9–21.

**13.** "Severability is a question of legislative intent. That intent must be determined on the basis of whether the objectionable feature of the statute can be excised without substantial impairment of the principal object of the statute." *Affiliated Distillers Brands Corp. v. Sills,* 60 N.J. 342, 345, 289 A.2d 257, 258 (1972).

**14.** The New Jersey Gross Income Tax Act became effective with respect to income earned on or after July 1, 1976. N.J.S.A. 54A:9–27. I do not understand that the plaintiffs seek relief affecting deductions for taxable years that ended in 1976. In any event, I believe that such retroactive relief would be a matter within the discretion of the court, and I would exercise my discretion to deny relief for any tax year that ended prior to January 1, 1977. See *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) and *New York v. Cathedral Academy,* —— U.S. ——, 98 S.Ct. 340, 54 L.Ed.2d 346 (1977). It is appropriate, however, to grant relief for any tax year that ended during 1977. The New Jersey taxable year must be the same as the taxpayer's taxable year for federal income tax purposes. N.J.S.A. 54A:8–3(a). Since most taxpayers are on a calendar year basis and their New Jersey returns are not due until April 15, there is still time to alert the public and the accounting profession of the unavailability of the deduction hereby invalidated. For the few returns, whether on a fiscal or calendar year basis, that have already been filed for tax years that ended in 1977, I do not believe that it will be unduly burdensome for the Director to assess taxpayers who have taken the deduction with an additional tax.

**15.** The Director of the Division of Taxation in the New Jersey Department of the Treasury is charged with administration and enforcement of the New Jersey Gross Income Tax Act. N.J.S.A. 54A:9–17(a) and N.J.S.A. 54A:9–19.