**MINNESOTA CIVIL LIBERTIES UNION et al., Plaintiffs,**

**v.**

**Arthur ROEMER et al., Defendants,**

**and**

**Terry Sullivan et al., and Richard and Beverly Berget et al., Intervenor-Defendants.**

**Civ. No. 3–76–167.**

United States District Court, D. Minnesota, Third Division.

June 19, 1978.

Donald D. Alsop, J., dissented and filed opinion.

William B. Henschel and Randall D. B. Tigue, Minneapolis, Minn., for plaintiffs.

Warren Spannaus, Atty. Gen., Stephen F. Befort, Special Asst. Atty. Gen., St. Paul, Minn., for state defendants.

Gordon W. Shumaker, St. Paul, Minn., for intervenor defendants Terry Sullivan, et al.

John R. Kenefick, St. Paul, Minn., for intervenor defendants Richard and Beverly Berget, et al.

## MEMORANDUM AND ORDER

Before HEANEY, Circuit Judge, DEVITT, Chief District Judge, and ALSOP, District Judge.

DEVITT, Chief District Judge.

The basic issue in this declaratory judgment action is whether a Minnesota law permitting parents of students attending public and private schools to claim up to $700.00 a year of the expense as a deduction of their state income tax return has the primary effect of advancing religion in violation of the Establishment Clause of the First Amendment to the United States Constitution. We find that it does not.

The law in question was enacted in 1955, Laws 1955, ch. 741, § 1 and now appears with amendments in Minn.Stat. § 290.09(22) (1976). It provides:

> Subdivision 1. Limitations. The following deductions from gross income shall be allowed in computing net income . .
>
> Subd. 22. Tuition and Transportation expense. The amount he has paid to others, not to exceed $500 for each dependent in grades K to 6 and $700 for each dependent in grades 7 to 12, for

tuition, textbooks, and transportation of each dependent in attending an elementary or secondary school situated in Minnesota, North Dakota, South Dakota, Iowa, or Wisconsin, wherein a resident of this state may legally fulfill the state's compulsory attendance laws, which is not operated for profit, and which adheres to the provisions of the Civil Rights Act of 1964 and chapter 363. As used in this subdivision, "textbooks" shall mean and include books and other instructional materials and equipment used in elementary and secondary schools in teaching only those subjects legally and commonly taught in public elementary and secondary schools in this state and shall not include instructional books and materials used in the teaching of religious tenets, doctrines, or worship, the purpose of which is to inculcate such tenets, doctrines, or worship.

Plaintiffs are seven organizations and three individual Minnesota taxpayers. Defendants are state officials responsible for administration of the law. Parents of children attending schools which fall within the statutory definition, some of which have religious affiliations, have been allowed to intervene as defendants. Jurisdiction is es-tablished, and the standing of plaintiffs to sue is unchallenged. The matter was submitted on a stipulation of facts, briefs, and oral arguments.

■ The governing standard for analyzing plaintiffs' claims is found in the "clearly stated, if not easily applied" three-pronged test established by a long line of Supreme Court decisions. *Meek v. Pittenger*, 421 U.S. 349, 358, 95 S.Ct. 1753, 1759, 44 L.Ed.2d 217 (1975). This test focuses on the purpose of the statute, the primary effect of its operation, and the degree to which administration of the statute will or does foster government entanglement with religion. Although there is some discussion of the first and third aspects of this test in plaintiffs' brief, counsel for plaintiffs stated at oral argument that plaintiffs' contentions are directed solely to the second element.[1] Hence, we need only determine whether the primary or principal effect of the statute advances or inhibits religion.

■ Plaintiffs have further narrowed the issues by conceding that if certain expense items constitutionally can be supplied directly by the state, *a fortiori*, an indirect subsidy for the items via a tax deduction is valid.[2] Therefore, since the state can pro-

1. Plaintiffs' acknowledgement of the weakness of their case with respect to the first and third factors finds support in the case law. We could not discover any case involving state aid to parochial schools and/or their students in which the court found that the legislative motive for enacting the aid program was secular in nature. Courts regularly recognize that school aid statutes are prompted by a legislative concern that all schools in the state comply with minimum educational standards. This motive is presumptively valid. *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Plaintiffs have not indicated any circumstances which rebut the presumption in this case.

As to the third factor, the Supreme Court has implicitly recognized that the church-state contacts occasioned by normal tax administration procedures do not give rise to excessive and unconstitutional entanglements between government and religion. *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 1414–15, 25 L.Ed.2d 697 (1970). In that case, the Court upheld New York City's exemption of church property used solely for religious purposes from real estate taxation. Obviously, adminis-tration of such an exemption requires a finding by some official that a given parcel of realty is used for genuine religious purposes. However, this administrative interface between the tax official and the church property was insufficient to create an entanglements problem. The administration of the challenged statute will foster even less entanglement since the eligibility of schools whose students may make use of the deduction is not determined by an in depth case-by-case analysis of the genuineness of the schools's religious functions. Rather, eligibility is clearly established if a school meets certain entirely secular requirements—non-profit status, compliance with compulsory attendance laws, and adherence to state and federal civil rights statutes.

2. To be sure, there is some authority for the proposition that differing aid mechanisms for public and private school students—providing transportation and textbooks to public school students directly while giving the same aid to private school students indirectly by means of the deduction—violates the First Amendment. *Members of Jamestown School Committee v. Schmidt*, 427 F.Supp. 1338 (D.R.I.1977); *Amer-*

vide textbooks, *Board of Education v. Allen*, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), and transportation, *Everson v. Board of Education*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), for parochial school students without offending the Establishment Clause, the statutory deduction for parental expenditures to purchase these items is constitutionally proper.[3] On the other hand, it is equally clear that the other types of enumerated aid cannot be given by the state either in kind or in the form of a monetary grant to purchase the items. The tuition component of the statute is particularly troublesome since there is no language limiting the tuition deduction to the cost of a secular education. Thus, it appears that the deduction could be taken for expenditures directed to tuition charges for religious subjects. It is beyond dispute that the state could not directly supply funds for this purpose. *Committee for Public Education and Religious Liberty v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 2969–73, 37 L.Ed.2d 948 (1973). Moreover, even if a direct-aid statute limited the tuition aspect to only

secular tuition, constitutional problems might well remain, due either to primary effect or entanglements problems. *Id.* (effect) and *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 2112–15, 29 L.Ed.2d 745 (1971) (entanglements). Except for so-called "textbook substitutes," the remaining specified items, instructional materials and equipment, even though explicitly limited to those with secular content, cannot be loaned or given to parochial school students by the state. Note 3, *supra.* Consequently, the focus of the court's inquiry is reduced to determining whether the deduction of individual expenditures for tuition, instructional materials, and equipment has the primary effect of advancing religion.

A general theme running throughout defendants' presentations is the proposition that the statute is merely general welfare legislation which only incidentally affects religious beliefs or education. Defendants contend that this tax deduction, like all other tax deductions, primarily is designed to provide tax relief for persons who make expenditures which society wishes to en-

*icans United for Separation of Church and State v. Benton*, 413 F.Supp. 955 (S.D.Iowa 1975); and *Public Funds for Public Schools of New Jersey v. Marburger*, 358 F.Supp. 29 (D.N. J.1973), aff'd, 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134 (1974). However, in the first two cases, disparate treatment resulted in an added *substantive* benefit to private school students—private school students were granted bus transportation options which were not available to public school students.

Under the statute at issue in *Marburger*, parents of private school students were reimbursed by the state for money spent to purchase textbooks. After finding that 85% of the schools benefited under the statute were religiously affiliated, the court held that the law, which was explicitly directed only to parents of nonpublic school students, was a legislative attempt to benefit a special class composed of sectarian schools and their students. In the case at bar, differing facts dictate a contrary result. First and foremost, the statute is not directed only to private schools. Rather, it applies to parents of children attending any school, public or private, within the five-state region. Second, the stipulation of facts recites only that *some* taxpayers who claim the deduction have dependents who attend parochial schools. Stipulation, ¶ 8. Thus, the facts presented do not indicate that this facially neutral statute is being employed to primarily ben-

efit parochial school students. Unlike the enactment challenged in *Marburger*, this statute " . . . merely makes available to *all* children the benefits of a general program . . ." *Board of Education v. Allen*, 88 S.Ct. at 1926. *Of course, this analysis only extends to plaintiffs' concessions with respect to textbooks and transportation. Facial neutrality is not controlling with respect to the forbidden forms of aid.*

**3.** The last sentence of the statute, which broadens the commonsense definition of textbooks to include instructional materials and equipment, was added to the law in 1976. It is not clear whether this amendment greatly increased the scope of the deduction to include more than textbooks or whether it was merely explanatory. The interaction of this ambiguity and plaintiffs' concession causes some analytical difficulties since the only instructional materials and equipment which can be provided directly by the state are "textbooks substitutes" —materials which are to be used by individual students and which form a principal study material for a given class. *Wolman v. Walter*, 433 U.S. 229, 97 S.Ct. 2593 at 2605, 53 L.Ed.2d 714 and *M.C.L.U. v. Casmey*, No. 3–76–Civ. 8 (D.Minn., Oct. 31, 1977). For the purpose of this case, the court interprets plaintiffs' concession as extending only to transportation, textbooks, and textbook substitutes.

courage. Thus, they argue the statute is sustainable under the line of cases which hold that a "religious institution need not be quarantined from public benefits that are neutrally available to all." *Roemer v. Board of Public Works,* 426 U.S. 736, 96 S.Ct. 2337, 2344, 49 L.Ed.2d 179 (1976). To support this position, defendants point to the facial neutrality of the statute and to the fact that parents of *public* school students could benefit from the deduction if they were called upon to make expenditures for types of educational aid which are not supplied by the state. They analogize the deduction to the general welfare programs approved in *Everson v. Board of Education, supra,* (school transportation); *Board of Education v. Allen, supra,* (textbooks); *Roemer v. Board of Public Works, supra,* noncategorical grants to private colleges and universities; *Hunt v. McNair,* 413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973) (state revenue bonds to finance college and university construction); and *Tilton v. Richardson,* 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971) (federal grants for private college and university construction).

■ However, facial neutrality of a statute and the fact that its operative reach may extend beyond a class composed of sectarian institutions may be insufficient as a constitutional matter "if in fact the state is lending direct support to a religious activity." *Roemer v. Board of Works, supra,* at 2345. In all of the cited cases, it was absolutely clear that the state aid was directed solely toward the secular aspect of the religious institution and that the only sectarian effect of the aid was to allow the institution to spend its own limited resources on religious ends. Here, where such is not clearly the case, the court must look beyond the text of the statute and determine whether the deduction primarily advances the religious functions of the affected parochial schools.

Much of the argument in this case has concentrated on the two most relevant cases, one favorable to plaintiffs, the other supportive of defendants. Plaintiffs have heavily relied on *Committee for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973) and have sought to distinguish *Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) while defendants have done the contrary. This emphasis on case as opposed to doctrinal analysis may seem somewhat simplistic, but due to the chaotic state of legal theory in this area of constitutional law, the court sees no other mode of examination which can reliably foretell the probable view of the Supreme Court. There appears to be no discernible consistency in the decisions of the Court in Establishment Clause challenges to state school aid statutes.[4]

In *Nyquist,* the Court found unconstitutional a New York statute which, *inter alia,* provided tax relief to parents of children attending non-public schools by allowing them to subtract from their gross income a specified dollar amount which decreased as gross income increased. The Court noted that while the tax benefit was in form a deduction, it operated as a tax credit. Although the Court refused to decide the case on the basis of the technical label to be applied to the benefit, it explicitly reserved decision on the constitutionality of a true tax deduction. *Id.,* 413 U.S. at 791, n. 49, 93 S.Ct. at 2974, n. 49. Several other cases involving similar tax programs have been invalidated on the strength of *Nyquist. United Americans for Public Schools v. Franchise Tax Board of the State of California,* No. C–73–0090 (N.D.Cal., filed Feb. 1, 1974), *aff'd mem.,* 419 U.S. 890, 95 S.Ct. 166, 42 L.Ed.2d 135 (1974); *Kosydar v. Wolman,* 353 F.Supp. 744 (S.D.Ohio 1972), *aff'd*

---

4. For example, under the case law, parochial school students can be loaned textbooks, *Board of Education v. Allen, supra,* but cannot be reimbursed for the loan value of books which they purchase, *Public Funds for Public Schools of New Jersey v. Marburger, supra.* They can receive textbooks but cannot obtain maps which supplement information found in the textbooks. *Wolman v. Walter, supra* at 2605–7. They can be bussed to and from school, *Everson v. Board of Education, supra,* but once at school cannot be provided with state-funded transportation for field trips, *Wolman v. Walter, supra* at 2608–9.

*mem. sub nom. Grit v. Wolman,* 413 U.S. 901, 93 S.Ct. 3062, 37 L.Ed.2d 1021 (1973); *Public Funds for Public Schools of New Jersey v. Byrne,* 444 F.Supp. 1228, (D.N.J., filed Feb. 1, 1978); and *M.C.L.U. v. Minnesota,* 302 Minn. 216, 224 N.W.2d 344 (1974), *cert. den.,* 421 U.S. 988, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975). Elements present in these statutes, which prompted the courts to distinguish the form of the tax relief from a "true deduction," were that the amount of tax relief decreased as income increased either by actually reducing the relief amount or by keeping the credit constant; often, the amount of relief was unrelated to actual expenditures for the objects of the relief; relief was available only to parents of non-public school students; and the statutes were of relatively recent vintage.

*Walz* is the only other Supreme Court decision which examined the Establishment Clause problems occasioned by tax benefits to religious organizations. In that case, the Court upheld the New York City Tax Commission's grant of a property tax exemption to property used solely for religious purposes, finding that the exemption was merely a passive abstention from taxation by the government not necessitating excessive contacts between church and state; that all fifty states had long recognized such an exemption while the federal government had allowed income tax exemptions for religious organizations for many years; and that the exemption was not limited to religious institutions but extended to all non-profit educational, charitable, and religious institutions. The Court relied upon these same factors in *Nyquist* to distinguish *Walz. Committee for Public Education and Religious Liberty v. Nyquist, supra* at 2975–76.

The first element noted in *Walz,* passive abstention from taxation, focuses on the degree to which the tax benefit aids the sectarian institution. All of the cases note that any form of tax relief to a religious organization results in an economic benefit. However, disagreement occurs in defining the point at which the connection becomes so remote that the statute no longer has the primary effect of advancing religion. Those who adhere to the opinion of the Court in *Walz* draw the line between outright grants and any form of tax relief. *Committee for Public Education and Religious Liberty v. Nyquist, supra* at 2978 (Rehnquist, J., dissenting). The majority in *Nyquist* would allow exemptions but not credits. Perhaps the best analytical framework for considering the problem is that set forth in *Kosydar v. Wolman, supra* at 763.

> [A]s the Court pointed out in *Walz* and *Lemon,* and as we pointed out in *Wolman,* direct monetary subsidies are more direct and entanglement—intensive than are exemptions, tax credits are more direct than income tax exclusions or deductions. . . . Slightly more direct than exemptions are tax deductions and exclusions which tend to be inverse to income and go to reduce the base upon which a percentage tax is levied.

The result is a spectrum which, in descending order of directness, reads monetary subsidies, tax credits, tax deductions and exclusions, and exemptions. We know from the case authorities that subsidies and credits which aid a sectarian function are forbidden and that exemptions are not. The question is, of course, on which side of the line do we place deductions?

Plaintiffs do not contend that the deduction granted by the challenged statute is not a true tax deduction. It is in form a tax deduction since it is subtracted from gross income, reducing the tax base as opposed to directly diminishing the amount of tax due. Its amount in a given case directly reflects the amount expended, and it is regressive in that the tax benefit increases as income increases. As counsel for intervenor defendants Berget, Ely, and DeHaan has noted in his brief, a parent of a parochial school student will only benefit from the deduction if he has made eligible expenditures, if he has itemized deductions, if he has a taxable income after all other deductions have been taken, and if the deduction causes him to be in a lower tax bracket. Therefore, it appears that the relationship between the tax relief and the economic

benefit to the religious function of the affected sectarian schools is much more remote than was the case with the credit systems invalidated in the previously cited opinions.

The other two, non-economic factors employed to distinguish *Walz* from *Nyquist* also favor distinguishing this case. First, as was noted previously, the class of beneficiaries under the statute is not simply parents of non-public school students but extends to parents of any public elementary or secondary school student who incurs the specified expenses. Second, the statute has been unchallenged since its enactment in 1955, much longer than the tax credit statutes alluded to above, and involves a tax mechanism which has been used for many years to encourage private contributions to religious organizations. Although no other state has a deduction exactly like that involved here, many states[5] and the federal government[6] allow taxpayers to deduct charitable contributions on their state and federal income tax returns, including contributions which aid only the religious function of sectarian institutions. Thus, like the situation in *Walz*, this unbroken practice of allowing tax benefits to churches by means of a deduction is not to be lightly cast aside. Moreover, it is not historical acceptance alone which supports this conclusion. As was the case in *Walz*, the deduction represents intentional legislative action to avoid the hostile impact of taxation on religion by freeing from taxation a portion of gross income donated to religious causes.

■ Despite repeated disavowments of the existing theoretical chaos in this field of constitutional law, "Jefferson's metaphoric 'wall of separation' between Church and State . . . [remains] . . . 'as winding as the famous serpentine wall' he designed for the University of Virginia." *Committee for Public Education and Religious Liberty v. Nyquist, supra* at 2959. In our view the Minnesota law, if and when examined by the Supreme Court, will be found on the constitutional side of Jefferson's wall because the statute is neutral and neither advances nor impedes religious activity, benefits the parents of children attending both public and non-public schools, has received unchallenged historical acceptance, and is analogous to the long recognized practice of tax deductible contributions to religious and charitable causes by federal and state governments. Accordingly, the statute does not have the primary effect of advancing religion in violation of the Establishment Clause.

DONALD D. ALSOP, District Judge (dissenting).

I respectfully dissent.

Minn.Stat. § 290.09(22) (1976) allows Minnesota taxpayers to claim deductions from their gross incomes for amounts which they have expended in connection with educating their dependents at qualified elementary and secondary schools located in Minnesota or in the states which surround Minnesota.[1] As to the deductions which are available for amounts paid as tuition to sectarian institutions and for transportation and instructional materials which the state may not constitutionally provide directly,[2] my

5. *See, e. g.,* Ariz.Rev.Stat. § 43–123.17(A); Ark. Stat.Ann. § 84–2016.3; Cal.Rev. & Tax Code § 17214(b)(2) (West); Iowa Code Ann. § 422.-9(2) (West); La.Rev.Stat.Ann. § 47:57(2) (West); Minn.Stat. 290.21(3)(b); and N.Y.Tax Law § 360(10)(b) (McKinney).

6. The federal income tax deduction is found in § 170 of the Internal Revenue Code. Except for summary rejections of constitutional attacks on this statute in the context of criminal tax enforcement proceedings, the constitutionality of this provision has never been decided. *United States v. Keig,* 334 F.2d 823 (7th Cir. 1964) and *Swallow v. United States,* 325 F.2d 97 (10th Cir. 1963), *cert. denied,* 377 U.S. 951, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964). However, the same was true of the property tax exemption involved in *Walz.* The point of the historical argument seems to be that long-standing acceptance removes the religious connotations associated with the tax benefit.

1. The deduction may not exceed $500 for each dependent in grades K to 6 or $700 for each dependent in grades 7 to 12.

2. *See Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593, 57 L.Ed.2d 714 (1977) (transportation to

opinion differs from that of the majority. Because Minn.Stat. § 290.09(22) (1976) provides for a tax deduction for tuition paid to sectarian schools and amounts paid for such transportation and instructional materials, I would hold that it has the primary effect of advancing religion and is therefore violative of the Establishment Clause of the First Amendment.

This analysis is premised on the proposition that the Establishment Clause is intended not only to prohibit governmental endorsement of any religious view or practice but also to ban the government's lending of any financial aid to a religious institution. *Everson v. Board of Educ.*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947). No one contends that Minn.Stat. § 290.09(22) (1976) constitutes governmental endorsement of any religious view or practice. Indeed, it does not require nor encourage anyone to adopt any sectarian conviction or to observe any religious practice. However, it does aid religious institutions by providing an economic benefit to religious schools; in doing so, it runs counter to the Establishment Clause.

It is well recognized that statutes are not rendered constitutionally invalid merely because they confer an indirect benefit to religious schools by relieving some of their financial burden or by making it easier for students to attend. *See Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975); *Tilton v. Richardson*, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1970). However, the benefit conferred by Minn.Stat. § 290.09(22) (1976) is a direct one.

In *Committee for Public Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973), the Supreme Court held that N.Y.Tax Law § 612 (Supp.1972–73) violated the Establishment Clause because the inevitable effect of a statute that provides tax benefits which aid parents who send their children to sectarian schools is to aid and advance those religious institutions. *Id.* at 793, 93 S.Ct. 2955. I

would hold that Minn.Stat. § 290.09(22) (1976) is constitutionally indistinguishable from N.Y.Tax Law § 612 (Supp.1972–73).

Minn.Stat. § 290.09(22) (1976) is unlike N.Y.Tax Law § 612 (Supp.1972–73) in three respects. First, § 290.09(22) applies to taxpayers whose dependents attend public as well as non-public schools. Secondly, the deduction provided by § 290.09(22) is related to the taxpayer's actual expenditures for his dependents' education. Finally, the Minnesota statute which provides a deduction for such educational expenses has gone unchallenged since the time of its original enactment in 1955 and has thereby achieved a modicum of historical acceptability.

However, despite those distinguishing features, I deem Minn.Stat. § 290.09(22) (1976) to be no less constitutionally objectionable than N.Y.Tax Law § 612 (Supp. 1972–73). The fact that § 290.09(22) applies to taxpayers whose dependents attend public schools is without practical significance. Although a taxpayer may be obligated to pay tuition for a dependent who attends a public school in a school district other than the district in which the student resides, Minn.Stat. § 123.39(5) (1978), the number of taxpayers actually affected by the obligation to pay such tuition is so limited that application of the deduction to such persons broadens the scope of Minn.Stat. § 290.09(22) (1976) only imperceptibly beyond the scope of N.Y.Tax Law § 612 (Supp.1972–73). Obviously, the tax reductions authorized by § 290.09(22) flow primarily to taxpayers whose dependents attend sectarian, non-public schools. *See Committee for Public Educ. & Religious Liberty v. Nyquist, supra* at 794, 93 S.Ct. 2955. Because the benefits of the statute flow primarily to such taxpayers, the § 290.09(22) deduction's inclusion of public school tuition payments does not transform Minn.Stat. § 290.09(22) (1976) into a broadly based program of tax relief benefitting a large class within which religious institutions are naturally included. *Cf. Walz v. Tax Comm'n*, 397 U.S. 664, 696,

and from school and textbooks and textbook substitutes constitutional; other instructional materials and transportation in connection with field trips unconstitutional).

**1324**

90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (concurring opinion). Likewise, the fact that the deduction provided by § 290.09(22) is related to the taxpayer's actual expenditures is without constitutional significance. Although *Nyquist* did leave open the question of a genuine tax deduction, the statute now before the court provides no less of a subsidy to the sectarian activities of the schools involved than did the statute declared unconstitutional in *Nyquist* because of the statute's subsidization of sectarian activity. Similarly, the fact that Minn.Stat. § 290.-09(22) (1976) and its predecessor have gone unchallenged from 1955 until now does not cloak the present statute with the sort of historical acceptability attained by the property tax exemption challenged in *Walz*. The exemption of churches from the payment of real property taxes has a history which goes back to the colonial era and to the time that the Bill of Rights was drafted. That exemption has attained virtually universal acceptance; every state did and does permit some form of tax exemption for real property owned by religious and other charitable institutions. On the other hand, the tax deduction for tuition has been available in Minnesota for less than twenty-five years. In addition, I am aware of only two other states which have attempted to provide similar deductions; in both states, the statutes were declared unconstitutional shortly after their enactment. *See Committee for Public Educ. & Religious Liberty v. Nyquist, supra* (N.Y.Tax Law § 612 (Supp.1972–73) unconstitutional); *Public Funds for Public Schools v. Byrne*, 444 F.Supp. 1228 (D.N.J.1978) (N.J.S.A. 54A:3–1(b)(2) unconstitutional).

Because I consider Minn.Stat. § 290.-09(22) (1976) to be constitutionally indistinguishable from the statute declared unconstitutional in *Nyquist*, I would hold that § 290.09(22) has the impermissible primary effect of advancing religion. Therefore, I would declare Minn.Stat. § 290.09(22) (1976) violative of the Establishment Clause of the First Amendment and would enjoin the statute's continued operation.