Van D. MUELLER, Individually and on behalf of the taxpayers of the State of Minnesota; June Noyes, Individually and on behalf of the taxpayers of the State of Minnesota, Plaintiffs,

v.

Clyde E. ALLEN, Jr., Commissioner of the Department of Revenue for the State of Minnesota, Defendant,

and

Dennis J. Berthiaume, Karen F. Berthiaume, Thomas W. Dzik, Mary J. Dzik, Edward F. Fujan, and Joleen A. Fujan,

and

Brenda B. Becker, Richard C. Hollingsworth, Marjorie Hollingsworth, Roger De Haan, and Dorothy De Haan, Each individually and on behalf of the taxpayers of the State of Minnesota, Intervenor-Defendants.

Civ. No. 3-80-395.

United States District Court,
D. Minnesota,
Third Division.

May 13, 1981.

William I. Kampf, St. Paul, Minn., for plaintiffs.

William P. Marshall, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant Clyde E. Allen, Jr., Commissioner of the Minnesota Department of Revenue.

Gordon W. Shumaker, Meir, Kennedy & Quinn, St. Paul, Minn., for intervenor-defendants Dennis J. and Karen F. Berthiaume, Thomas W. and Mary J. Dzik, and Edward F. and Joleen A. Fujan; Timothy P. Quinn, Meir, Kennedy & Quinn, St. Paul, Minn., on brief.

John R. Kenefick, Briggs & Morgan, St. Paul, Minn., for intervenor-defendants Brenda B. Becker, Richard C. and Marjorie Hollingsworth, and Roger and Dorothy De Haan.

## MEMORANDUM AND ORDER

RENNER, District Judge.

This action challenges the constitutionality of Minn.Stat. § 290.09(22) (1978), as violative of the First and Fourteenth Amendments to the Constitution of the United States. Plaintiffs assert that the challenged statute is a law advancing an establishment of religion and is in restraint of the free exercise of religion. Accordingly, plaintiffs seek a judgment by this Court invalidating the statute and an injunction against its enforcement by the State of Minnesota.

Initially, suit was brought by five individual plaintiffs on behalf of the taxpayers of the State of Minnesota. Pursuant to defendant Allen's motion, three of the plaintiffs were dismissed from the lawsuit. *See* Memorandum and Order, dated Oct. 14, 1980. Dismissal was based upon the doctrine of res judicata in that the three plaintiffs were found to have had an interest in *M. C. L. U. v. Roemer*, 452 F.Supp. 1316 (D.Minn.1978), an action that upheld the challenged statute against a constitutional challenge similar to the one now being advanced. This Court denied defendant's motion to dismiss the remaining plaintiffs, holding that *Roemer* was not a representative taxpayers' suit and, thus, did not bar the present taxpayers from bringing this action. The Court did not decide the stare decisis effect of *Roemer* since the factual record was, at that time, incomplete. At present, the factual basis of the case is not in dispute, although the parties differ as to inferences to be drawn and their legal consequences. Summary judgment is now appropriate.

## I. FACTS

Intervenor-defendants Berthiaumes, Dziks, and Fujans contend, as a preliminary matter, that the affidavits of James A. Lee and Phillip C. Miller, submitted by plaintiffs, should not properly be considered. The Lee affidavit purports to reveal the results of his examination of certain records of the Minnesota Department of Education relating to amounts of tuition paid by public school children. This information is offered to support plaintiffs' statistical argument.

Defendants object to Lee's affidavit on the ground that it is hearsay and barred by Fed.R.Civ.P. 56(e) and Fed.R.Evid. 901 since the affidavit fails to show that Lee possesses any personal knowledge of the matters contained in the affidavit. Defendants also argue that the affidavit is barred by Fed.R. Evid. 1002, in that the originals of the documents have not been produced. Since Lee's affidavit purports to summarize portions of certain state records, defendants contend that such secondary evidence may not be submitted. Finally, defendants challenge the affidavit for failing to include sworn or certified copies of the documents and records referred to, thus contravening Fed.R. Civ.P. 56(e).

Miller's affidavit is objected to on the grounds that it is hearsay; also that it has not been authenticated as required by Fed. R.Civ.P. 56(e) and Fed.R.Evid. 901. Defendants contend it is not possible to determine from the affidavit whether Miller is competent to authenticate the exhibit; that since Miller has no connection with the Minnesota Department of Revenue, he lacks personal knowledge of the information he seeks to convey.

There may well be merit to defendants' objections, but, for purposes of this opinion, they are not being considered.

The challenged statute, section 290.09(22), authorizes Minnesota taxpayers to claim income tax deductions for their dependents'

tuition, textbook, and transportation expenditures. The provision was originally enacted in 1955 and subsequently amended in 1976. Section 290.09(22) is a "true tax deduction" statute. It does not provide direct financial aid to its beneficiaries; it does not directly subsidize any activity; and it does not operate as a credit against a tax already determined. Qualifying expenditures are deductible only in their actual amounts and are subject to certain maximums. The deductions are subtracted from gross income and thus reduce the tax base. They result in a tax benefit only if the deduction moves the taxpayer into a lower tax bracket.

Deductions are subject to a maximum of $500 for each elementary school dependent and $700 for each secondary school dependent. There are three categories: Tuition; transportation; and textbooks.

Tuition includes:

1. Tuition in the ordinary sense.
2. Tuition to public school students who attend public schools outside their residence school districts.
3. Certain summer school tuition.
4. Tuition charged by a school for slow learner private tutoring services.
5. Tuition for instruction provided by an elementary or secondary school to students who are physically unable to attend classes at such school.
6. Tuition charged by a private tutor or by a school that is not an elementary or secondary school if the instruction is acceptable for credit in an elementary or secondary school.
7. Montessori School tuition for grades K through 12.
8. Tuition for driver education when it is part of the school curriculum.

Allowable deductions for transportation expenditures include the cost of transporting students in school districts that do not provide free transportation, the cost of transporting students who live in one district but attend school in another, and the cost of transporting students who attend school in their residence district but who do not qualify for free transportation because of proximity to their schools of attendance.

Textbook deductions include not only secular textbooks but also other necessary equipment, such as:

1. Cost of tennis shoes and sweatsuits for physical education.
2. Camera rental fees paid to the school for photography classes.
3. Ice skates rental fee paid to the school.
4. Rental fee paid to the school for calculators for mathematics classes.
5. Costs of home economics materials needed to meet minimum requirements.
6. Costs of special metal or wood needed to meet minimum requirements of shop classes.
7. Costs of supplies needed to meet minimum requirements of art classes.
8. Rental fees paid to the school for musical instruments.
9. Cost of pencils and special notebooks required for class.

## II. DISCUSSION

A. The stare decisis effect of the *Roemer* case.

In *Roemer*, a three-judge district court upheld the constitutionality of the statute. That court held the statute to be neutral and neither advances nor impedes religious activity, that it benefits the parents of children attending both public and private schools, has received unchallenged historical acceptance, and is analogous to the long-recognized practice of tax deductible contributions to religious and charitable organizations. *Roemer*, 452 F.Supp. at 1321–22.

A court is not irretrievably bound by its own precedents, but in the interests of uniformity, stability, and certainty in the law, will follow the rule of law established in earlier cases unless clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result

from a departure from precedent. 1B *Moore's Federal Practice* ¶ 0.402[3.–1] (1965 & Supp. 1980–81). However, a court's decision is not binding upon courts of equal rank. Moreover, a specially convened three-judge district court is still a district court. *Farley v. Farley*, 481 F.2d 1009, 1012 (2d Cir. 1973) (decision of a three-judge district court is no more of a precedent·than any other district court decision and is not binding on another district court).

■ Thus, this court is not bound by the *Roemer* ruling. But, this does not' mean that the prior ruling is without value in the adjudication of this case. The same issues raised by the parties here were raised in *Roemer*. Plaintiffs contend that not only was *Roemer* incorrectly decided, but that subsequent case law and facts not before the *Roemer* court establish the unconstitutionality of the challenged statute. An examination of the underlying issues is thus required.

Only one aspect need be discussed in detail, since the new facts offered·by plaintiffs relate only to the "primary effect" element of the Establishment Clause Test. The remaining elements were handled adequately in *Roemer* and plaintiff offers nothing new challenging its analysis and conclusions.

B. Whether section 290.09(22) violates the Establishment Clause of the First Amendment.

■ The Supreme Court has formulated a three-prong test by which the constitutionality of legislative action allegedly benefitting religious activity may be judged. In order to comport with the directive of the Establishment Clause such action must: (1) have a secular legislative purpose; (2) its principal or primary effect must be such as to neither advance nor inhibit religion; and (3) the action must not foster an excessive entanglement of the state in religious affairs. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).

Plaintiffs contend that the challenged statute does not satisfy the "secular purpose" segment of the Establishment Clause test, but decline discussion of the issue at this time. Since failure to satisfy any one of the three elements of the test requires a declaration of unconstitutionality, plaintiffs raise the issue solely for purposes of possible subsequent appeal. Defendants contend that the statute has a secular purpose since it seeks to assist Minnesota taxpayers in providing dependents with a safe, effective, and varied educational environment. Such a legislative purpose is presumptively valid and plaintiffs have not indicated any circumstances to rebut that presumption. *Lemon*, 403 U.S. at 613, 91 S.Ct. at 2111.

Plaintiffs' major attack on section 290.-09(22) centers on the "primary effect" element of the *Lemon* test. Specifically, plaintiffs contend that the tuition component of the challenged statute has the primary effect of advancing religion and religious activity. Although the tuition credit is available to all taxpayers regardless of whether their dependents attend sectarian or nonsectarian schools, plaintiffs assert that at least 82% and perhaps upward to 96% of the students who pay tuition attend sectarian schools. Thus, plaintiffs urge, section 290.09(22) is not a tax measure providing broad relief to the general public, but is directed toward and has the primary effect of advancing religion. Plaintiffs contend that the primary focus of the Court's analysis should be on the tuition component of the deduction since the permissible textbook and transportation deductions are *de minimus.*

Plaintiffs' statistical calculations are based on data provided by the Minnesota Department of Education indicating that 90,954 pupils attended nonpublic schools within the state during 1979–80. Of these, 4.56% attended schools purporting to be nonsectarian. During the 1978–79 school year, 3.71% of the 88,524 students attending nonpublic schools attended nonsectarian schools. These figures allegedly show that, in actuality, taxpayers qualifying for benefits under the law do so in the overwhelming number of instances by reason of tuition payments for religious education.

Plaintiffs, in essence, attack the facial neutrality of the statute, asserting that its actual effect is skewed toward the advancement of religion, thus falling within the prohibition proscribed in *Committee for Public Education v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); *Public Funds for Public Schools v. Byrne*, 590 F.2d 514 (3d Cir.), *aff'd*, 442 U.S. 907, 99 S.Ct. 2818, 61 L.Ed.2d 273 (1979); and *Rhode Island Federation of Teachers v. Norberg*, 630 F.2d 855 (1st Cir. 1980). These cases are largely distinguishable from the one at hand. *See* Memorandum and Order, dated Oct. 14, 1980, pp. 4–7.

Defendants, in turn, challenge plaintiffs' argument on both legal and factual grounds. Defendants argue, first, that there is no Supreme Court authority supporting plaintiffs' contention that the breadth of class issue requires a factual inquiry when the class includes both public and private school children, that is, a facially neutral statute. Defendants' argument is weakened by the fact that the Supreme Court has never had the issue before it for resolution. *See Nyquist*, 413 U.S. at 782 n.38, 93 S.Ct. at 2970 n.38. It is certainly plausible that if faced with the precise issue, the Court might require a factual inquiry into the breadth of the affected class, even when the class includes both public and private school children. *See id.; Norberg*, 630 F.2d 585.

Defendants also vigorously argue that there are errors in plaintiffs' factual and statistical data. From their data, plaintiffs project that at its theoretically broadest scope 14–18% of the taxpayers qualifying for a tuition deduction under the challenged statute do so by reasons of expenses related to nonsectarian schooling. Defendants contend, however, that plaintiffs have incorrectly assumed that only full-time tuition payments are relevant and have ignored such items as tuition for summer school and for certain other courses such as driver's education that are also tax deductible. Thus, defendants argue, the number of students for whom tuition tax deductions are available is not limited to the 3,360 full-time nonsectarian students as suggested by plaintiffs. Further, the affidavit of Ronald Moir states that over two million dollars were paid in tuition expenses to public schools. Plaintiffs' failure to include these types of tuition deductions as well as a variety of other charges depreciates the significance of their figures and calculations. The defendants further contend the allowable deductions for textbooks and transportation are not *de minimus* and must be considered. That thus, on a factual basis, the statute in application satisfies even a broad constitutional test of neutrality.

Defendants point also to the statute's operation as a "true deduction" as supporting the conclusion that the section does not have a primary effect of advancing religion. The Supreme Court has never decided the constitutionality of such a deduction for educational expenses. *See Nyquist*, 413 U.S. at 790 n.49, 93 S.Ct. at 2974 n.49. The nature of a deduction as opposed to a credit makes the benefit more remote. The significance of this characterization is that the more remote and indirect the benefit conferred, the more likely it will be upheld. *Walz v. Tax Commission*, 397 U.S. 664, 672–76, 90 S.Ct. 1409, 1413–15, 25 L.Ed.2d 697 (1970).

■ As discussed in *Roemer*, the key determination to be made here is whether the case is closer constitutionally to *Nyquist* or to *Walz* as to the benefit being conferred on religious institutions. This Court concurs in the analysis and judgment reached in *Roemer* that *Walz* is the closer controlling precedent. Moreover, the factual presentation here, rather than undercutting the *Roemer* decision, provides the factual support that was absent but assumed in that case. The defendants have shown that the statute provides widely distributed tax relief. Such relief is available to all parents with dependents attending elementary and secondary schools. This is a critical element since a law does not advance religion when its benefits are neutrally and widely distributed and from which religious institutions benefit only incidentally and indirectly. *Walz*, 397 U.S. at 672–76, 90 S.Ct. at 1413–

15. This conclusion is buttressed by the long-standing acceptance of an analog to section 290.09(22): deductibility of charitable and religious contributions from federal and state income taxes.

Plaintiffs further contend that the statute fails to satisfy the excessive entanglement test since the State's enforcement responsibility carries with it the danger of an impermissible entanglement of government in religious affairs. The *Roemer* court dismissed this argument as unsubstantial. *Roemer*, 452 F.Supp. at 1318 n.1. The Supreme Court has implicitly recognized that church-state contacts occasioned by normal tax administration procedures do not give rise to excessive and unconstitutional government and religion entanglements. *See Walz*, 397 U.S. at 674–76, 90 S.Ct. at 1414–15. Possible entanglement here is lessened by the fact that eligibility of schools is not determined by an in-depth case-by-case analysis of the genuineness of the schools' religious functions. Eligibility is clearly established if a school meets certain entirely secular requirements: nonprofit status, compliance with compulsory attendance laws, and adherence to state and federal civil rights statutes. While there may be times that certain deductions for textbooks or other specific expenses may call for an examination of impermissible purpose, the amount of entanglement will be minimal. Further, the primary enforcement tool will be an individual audit, which would not necessarily entangle the state impermissibly in church affairs. Plaintiffs fail to establish the reasonable likelihood that this section and any accompanying government regulation will involve intrusion into religious matters. *Catholic Bishop of Chicago v. NLRB*, 559 F.2d 1112, 1116 (7th Cir. 1977), aff'd, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).

C. Whether section 290.09(22) violates the Free Exercise Clause of the Constitution.

Plaintiffs argue that by permitting some citizens to reduce the amount of tax paid to the State the statute operates to single out for lessor burdens certain forms of religious activity. It, thus, increases amounts other citizens must contribute to support predetermined levels of state expenses. This argument tends to overlook the deductions are available to public school parents, the substantial revenues received by public school districts, and the fact that taxpayers who have dependents in nonpublic schools save remaining taxpayers the costs of educating those dependents. Moreover, plaintiffs have not alleged how their religious beliefs are infringed. *McGowan v. Maryland*, 366 U.S. 420, 429–30, 81 S.Ct. 1101, 1106–07, 6 L.Ed.2d 393 (1968).

### III. CONCLUSION

Plaintiffs have failed to convince the Court that *Roemer* was incorrectly decided or that there are additional facts that demonstrate the statute has the primary benefit of advancing religion. Plaintiffs' statistical argument lacks credibility by reason of omissions of serious significance. The statute is neutral on its face and in its application and does not have a primary effect of either advancing or inhibiting religion. The statute is constitutional and summary judgment in favor of defendant shall be entered.

Based on the foregoing, the record, and the briefs and arguments of counsel,

IT IS HEREBY ORDERED that

1. Plaintiffs' Motion for Summary Judgment is denied.

2. Defendant's Cross-Motion for Summary Judgment is granted.

3. Plaintiffs' Complaint is hereby dismissed.