676 F.2d 1195
 4 Ed. Law Rep. 24
 Van D. MUELLER, individually and on behalf of the taxpayers
of the State of Minnesota; June Noyes,
individually and on behalf of the
taxpayers of the State of
Minnesota, Appellants,
v.
Clyde E. ALLEN, Jr., Commissioner of the Department of
Revenue for the State of Minnesota, and Dennis J.
Berthiaume; Karen F. Berthiaume; Thomas W. Dzik; Mary J.
Dzik; Edward F. Fujan and Joleen A. Fujan, and Brenda B.
Becker; Richard C. and Marjorie Hollingsworth; Roger and
Dorothy Haan, each individually and on behalf of the
taxpayers of the State of Minnesota, Appellees.
 No. 81-1569.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1981.
Decided April 30, 1982.
 
 Meier, Kennedy, Quinn & Shumaker and Timothy P. Quinn and Gordon W. Shumaker, St. Paul, Minn., for intervenors-appellees Dennis J. Berthiaume, et al.
 Briggs & Morgan and John R. Kenefick, St. Paul, Minn., for intervenors-appellees Brenda B. Becker, et al.
 Warren Spannaus, Atty. Gen., State of Minn., Douglas C. Blomgren, William P. Marshall, Sp. Asst. Attys. Gen., St. Paul, Minn., for appellee Clyde E. Allen, Jr.
 William I. Kampf, St. Paul, Minn., for appellants.
 Leo Pfeffer, New York City, for amicus curiae.
 Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Minnesota Statute § 290.09, subdivision 22, authorizes a limited income tax deduction to Minnesota taxpayers for certain school-related expenses incurred on behalf of dependents. The plaintiffs-taxpayers in this action claim that the statute advances an establishment of religion and restrains free exercise of religion in violation of the first and fourteenth amendments of the United States Constitution. The district court granted the Commissioner's and intervening taxpayers' motions for summary judgment and held that the statute is "neutral on its face and in its application and does not have a primary effect of either advancing or inhibiting religion." Mueller v. Allen, 514 F.Supp. 998, 1003 (D.Minn.1981).[1] This appeal followed. We affirm the judgment of the district court.
 
 
 2
 Facts.
 
 
 3
 Section 290.09, subdivision 22,[2] authorizes a deduction to gross income for tuition, textbook, and transportation expenses incurred on behalf of dependents attending elementary or secondary schools. The deduction is limited to actual expenses incurred up to a $500 maximum per dependent in grades K to 6 and a $700 maximum per dependent in grades 7 to 12. Deductible expenses under subdivision 22 are restricted to those incurred in conjunction with schools which, inter alia, enable a Minnesota resident to fulfill state compulsory attendance laws. This restriction apparently encompasses public and nonpublic, secular and sectarian, educational institutions.
 
 
 4
 The district court found deductible tuition expenses to include:
 
 
 5
 1. Tuition in the ordinary sense.
 
 
 6
 2. Tuition to public school students who attend public schools outside their residence school districts.
 
 
 7
 3. Certain summer school tuition.
 
 
 8
 4. Tuition charged by a school for slow learner private tutoring services.
 
 
 9
 5. Tuition for instruction provided by an elementary or secondary school to students who are physically unable to attend classes at such school.
 
 
 10
 6. Tuition charged by a private tutor or by a school that is not an elementary or secondary school if the instruction is acceptable for credit in an elementary or secondary school.
 
 
 11
 7. Montessori School tuition for grades K through 12.
 
 
 12
 8. Tuition for driver education when it is part of the school curriculum.
 
 514 F.Supp. at 1000.[3]
 
 13
 The statute itself restricts deductible textbook expenses by excluding expenditures for books for courses not legally and commonly taught in public schools, books whose purpose is to teach or inculcate religious tenets, doctrines or worship, and books or materials for certain extracurricular activities.[4]
 
 
 14
 The district court found that subdivision 22 operates as a true tax "deduction," as opposed to a "credit." The taxpayer realizes a tax benefit only in the event that the resulting decrease in net taxable income places the taxpayer in a lower tax bracket. 514 F.Supp. at 1000.
 
 
 15
 Plaintiffs contend that statistical evidence allegedly demonstrates that an overwhelming majority of taxpayers who utilize the deduction authorized by Minn.Stat. § 290.09, subd. 22, have dependents attending parochial schools; thus, it is urged that the statute has the primary effect of supporting and advancing religion in violation of the Establishment Clause of the first amendment. Plaintiffs also argue that the statute does not have a valid secular purpose and that it fosters an impermissible entanglement between church and state.
 
 
 16
 Analysis.
 
 
 17
 The first amendment states in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S.Const., amend. I.[5] Despite the apparent absolute prohibition contained in the Establishment and Free Exercise Clauses, a strict policy of total separation of church and state has been neither advocated nor enforced in this nation. As Justice Powell observed, existing standards do not necessarily afford "bright line" guidance. Committee for Public Education & Religious Liberty v. Nyquist, 413 U.S. 756, 760-61, 93 S.Ct. 2955, 2959-2960, 37 L.Ed.2d 948 (1973).
 
 
 18
 Without repeating the history of the Establishment Clause,[6] we note that, although a law may be one respecting the establishment of religion while aiding all religions equally and without promoting a state religion, see Everson v. Board of Education, 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947), a law that indirectly benefits religion or religious institutions is not invalid per se on those grounds. See, e.g., Wolman v. Walter, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977) (law providing loan of textbooks purchased with state funds and provision of diagnostic services to nonpublic schools upheld); Hunt v. McNair, 413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973) (law providing aid to church colleges through revenue bonds for construction upheld); Tilton v. Richardson, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971) (law providing grants to church colleges for construction of buildings used for secular purposes upheld); Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (law providing real estate tax exemptions to churches upheld); Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968) (law providing for loan of state textbooks to nonpublic schools upheld). See also Widmar v. Vincent, --- U.S. ----, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (Establishment Clause does not preclude use of state university facilities by registered student religious organization).
 
 
 19
 Much of the recurring case law in this area has evolved around the troublesome relationship between religion and education, see Nyquist, 413 U.S. at 772, 93 S.Ct. at 2965, and, while seemingly inconsistent, has developed into a three-part test. In order to pass constitutional muster, a statute which allegedly violates the Establishment Clause must, first, have a secular legislative purpose; second, have a principal or primary effect that neither advances nor inhibits religion; and third, not foster an excessive government entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971).
 
 
 20
 Plaintiffs allege that Minn.Stat. § 290.09, subd. 22, does not satisfy the secular purpose requirement of Lemon v. Kurtzman.[7] The gist of plaintiffs' argument is that the preeminent purpose of the statute must necessarily be to aid religion because statistics show that the overwhelming effect of the statute is to aid taxpayers with dependents in sectarian schools. Cf. Stone v. Graham, 449 U.S. 39, 41, 101 S.Ct. 192, 193, 66 L.Ed.2d 199 (1980) (preeminent purpose of Kentucky statute requiring posting Ten Commandments in public school classrooms is religious notwithstanding avowed secular purpose). Defendants urge that plaintiffs are "boot strapping" their "secular purpose" attack with the "primary effects" prong of their argument, and that a statute may violate the Establishment Clause and still have a valid secular purpose. See Meek v. Pittenger, 421 U.S. 349, 363, 95 S.Ct. 1753, 1762, 44 L.Ed.2d 217 (1975); Committee for Public Education & Religious Liberty v. Nyquist, 413 U.S. 756, 773, 93 S.Ct. 2955, 2965-2966, 37 L.Ed.2d 948 (1973). Defendants further urge that section 290.09, subd. 22, has the valid secular purpose of seeking to assist Minnesota taxpayers in providing dependents with a safe, effective and diverse educational environment. Cf. Wolman v. Walter, 433 U.S. 229, 236, 97 S.Ct. 2593, 2599, 53 L.Ed.2d 714 (1977) (purpose of Ohio statute authorizing funding for use of nonpublic school children for, inter alia, purchase of secular textbooks was to reflect state's "legitimate interest in protecting the health of its youth and in providing a fertile educational environment for all the schoolchildren of the State").
 
 
 21
 The district court found no indicia of an invalid nonsecular purpose of Minn.Stat. § 290.09, subd. 22. 514 F.Supp. at 1001. We concur. The manifest purpose of the challenged statute is to provide all taxpayers a benefit which will operate to enhance the quality of education in both public and private schools.
 
 
 22
 Plaintiffs focus their constitutional challenge on the "primary effect" of the tuition portion of the statute.[8] At trial they relied upon statistical calculations based upon data provided by the Minnesota Department of Education indicating that of the 90,954 pupils who attended nonpublic schools in 1979-80,[9] 4.56% attended purportedly nonsectarian schools. During 1978-79, 3.71% of the 88,524 pupils in nonpublic schools attended nonsectarian schools. Plaintiffs urge here that the State loses over 2.4 million dollars in revenue from this deduction and that 71% of this amount is due to benefits given to parents with dependent children in sectarian schools. Plaintiffs assert that these facts, coupled with the fact that Minnesota public schools are tuition-free to most residents, show that the overwhelming percentage of tax relief granted under the statute is for tuition expenditures for religiously-affiliated education. Therefore, it is argued that the primary effect of the statute is the support and advancement of religion, thus falling within the purview of Committee for Public Education & Religious Liberty v. Nyquist, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); Public Funds for Public Schools v. Byrne, 590 F.2d 514 (3d Cir.), aff'd mem., 442 U.S. 907, 99 S.Ct. 2818, 61 L.Ed.2d 273 (1979); and Rhode Island Federation of Teachers v. Norberg, 630 F.2d 855 (1st Cir. 1980).
 
 
 23
 Defendants oppose this argument on both factual and legal grounds. Plaintiffs' statistical evidence is challenged on the grounds that it fails to account for tax benefits running to taxpayers with dependents in public and nonsectarian private schools with ordinary tuition expenses, with textbooks and transportation expenses, and with summer school and driver's education class tuition expenses. The district court found that plaintiffs' statistical argument contained "omissions of serious significance" and held that the benefited class under Minn.Stat. § 290.09, subd. 22, was sufficiently broad that the primary effect did not serve to promote or inhibit religion. 514 F.Supp. at 1002-03.
 
 
 24
 Defendants also claim that a de jure, not a de facto, analysis is the proper test in ascertaining the breadth of the benefited class. Defendants submit that the Supreme Court has adopted the de facto approach urged by plaintiffs only when confronted with a statute that does not extend its benefits to a broad class of beneficiaries. Compare Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); and Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (broad class) with Committee for Public Education & Religious Liberty v. Nyquist, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); and Public Funds for Public Schools v. Byrne, 590 F.2d 514 (3d Cir.), aff'd mem., 442 U.S. 907, 99 S.Ct. 2818, 61 L.Ed.2d 273 (1979) (narrow class).
 
 
 25
 Defendants urge that Minn.Stat. § 290.09, subd. 22, is a general welfare measure, that any benefits flowing to religious schools by way of possible incentive to taxpayers to send their dependents to private school are both remote and incidental, that the primary benefit is to individual parents and students, and that such a tuition and transportation deduction has been authorized since 1955. These factors, it is argued, when viewed in light of the breadth of the affected class of beneficiaries, precipitate toward a finding of neutrality.
 
 
 26
 Plaintiffs rely upon Committee for Public Education & Religious Liberty v. Nyquist, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973). In Nyquist, the Supreme Court found unconstitutional a New York tax statute which authorized taxpayers with children attending nonpublic elementary and secondary schools to "deduct" a stipulated amount from adjusted gross income. Because the amount of the deduction was predicated on and graduated according to the taxpayer's income, not actual tuition expenses incurred, the Court observed that the "deduction" operated more as a hybrid tax "credit." 413 U.S. at 789, 93 S.Ct. at 2973-2974. However, the Court's decision did not turn on this technical label, and a decision as to the constitutionality of a genuine tax deduction was specifically reserved. 413 U.S. at 789, 790 n.49, 93 S.Ct. at 2973-2974 n.49. The Nyquist Court characterized the arbitrary deductions as a type of " 'forgiveness' in exchange for performing a specific act which the State desires to encourage," 413 U.S. at 789, 93 S.Ct. at 2974, and described the encouraged act as "sending (his) children to nonpublic schools." 413 U.S. at 791, 93 S.Ct. at 2974. These factors, plus the fact that the "deduction" was limited to the narrow class of nonpublic schools, were of primary importance to the Nyquist Court. 413 U.S. at 794, 93 S.Ct. at 2976.[10]
 
 
 27
 Since the three-judge decision in M.C.L.U. v. Roemer, the First Circuit in Rhode Island Federation of Teachers v. Norberg, 630 F.2d 855 (1st Cir. 1980), held unconstitutional a Rhode Island tax statute which was nearly identical to the challenged Minnesota statute. The Norberg court found that, although a deduction was available to taxpayers with dependents attending public and nonpublic schools, 94% of students attending nonpublic and tuition-funded public schools attended sectarian schools. 630 F.2d at 859. The Norberg court distinguished the Roemer decision on the grounds that the exact nature of the benefited class in Roemer never became known since the parents had stipulated that only "some" students whose parents were eligible for the tax benefit attended sectarian schools.[11] The First Circuit concluded that the evidence in Norberg showed that the overwhelming majority of the parents eligible for the tuition deduction send their children to sectarian schools. 630 F.2d at 861.
 
 
 28
 The district court in Norberg also found that the fact that the Rhode Island statute included a deduction for " 'other instructional materials and equipment' in addition to books (made) the likelihood of entanglement even greater ... because the government would not only have to supervise the parents' purchases, but it would have to supervise the parochial schools themselves to ensure that the 'instructional materials' were not to be used in the course of religious instruction." Rhode Island Federation of Teachers v. Norberg, 479 F.Supp. 1364, 1372 (D.R.I.1979). On appeal this decision was affirmed.[12]
 
 
 29
 We find that the constitutional issues present under the Minnesota statute require more than facile solution; obviously the First Circuit's conflicting analysis in Norberg is cause for grave concern. The challenged statutes in both cases are identical; the overall proofs are almost identical and similarly uninformative.[13]
 
 
 30
 Nevertheless, our analysis places us in apparent disagreement with Norberg. We find the issue before us significant not only to the State of Minnesota but to the nation. Eventually, if not within the parameters of this case, the Supreme Court must decide whether statutes such as those in Rhode Island and Minnesota can survive constitutional scrutiny.
 
 
 31
 Transportation.
 
 
 32
 No one seriously challenges the transportation deduction. If state financed transportation is permissible under Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), surely an indirect tax deduction to all Minnesota parents is constitutional. In Everson the statute was upheld not because the financial benefit was directed at parents but because the benefits were directed to all parents in the community at large. See 330 U.S. at 16, 67 S.Ct. at 511-512. Clearly the primary effect of the transportation deduction of the Minnesota statute is not to aid the establishment of religion. See also Minn.Stat.Ann. §§ 123.76-123.80 (West Supp.1982) (authorizes state to provide public transportation to parochial school students).
 
 
 33
 Textbooks.
 
 
 34
 Similarly, we find the tax deduction for secular textbooks and "instructional materials and equipment" to all parents to be constitutional. The deduction for secular textbooks for all parents falls within the constitutional protection of Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). See Minn.Stat.Ann. §§ 123.931-123.947 (West Supp.1982) (authorizes state to provide educational aids such as textbooks, standardized tests and pupil support services for nonpublic school children). We acknowledge that the fact that the statute also permits a deduction for "instructional material and equipment" is troublesome. Relying upon Meek v. Pittenger, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), and Wolman v. Walter, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), the First Circuit in Norberg found these deductions objectionable. See also Public Funds for Public Schools v. Marburger, 358 F.Supp. 29 (D.N.J.1973), aff'd mem., 417 U.S. 961, 94 S.Ct. 3163, 41 L.Ed.2d 1134 (1974).
 
 
 35
 We view Meek, Wolman, and Marburger as distinguishable. In those cases massive loans of instructional materials and equipment were made directly to the institutions themselves. As the Court observed in Meek :
 
 
 36
 For the 1972-1973 school year the Commonwealth authorized just under $12 million of direct aid to the predominantly church-related nonpublic schools of Pennsylvania through the loan of instructional material and equipment pursuant to Act 195. To be sure, the material and equipment that are the subjects of the loan-maps, charts, and laboratory equipment, for example-are "self-polic(ing), in that starting as secular, nonideological and neutral, they will not change in use." (Meek v. Pittenger,) 374 F.Supp. (639), at 660. But faced with the substantial amounts of direct support authorized by Act 195, it would simply ignore reality to attempt to separate secular educational functions from the predominantly religious role performed by many of Pennsylvania's church-related elementary and secondary schools and to then characterize Act 195 as channeling aid to the secular without providing direct aid to the sectarian. Even though earmarked for secular purposes, "when it flows to an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission," state aid has the impermissible primary effect of advancing religion. Hunt v. McNair, 413 U.S. 734, 743 (93 S.Ct. 2868, 2874, 37 L.Ed.2d 923).
 
 
 37
 421 U.S. at 365-66, 95 S.Ct. at 1763.
 
 
 38
 In the present case the tax benefit is directed to the parent and the student and not to the school. Although Nyquist finds that this fact alone does not immunize tax benefits to a parent from constitutional attack, we think it is a significant factor as it relates to the type of material and equipment which a student will purchase. The needs of the institution from the standpoint of instructional materials and equipment are distinct from the needs of the student. Instructional equipment equally useful in both secular and religious training by the institution presents a different concern than do supplies which a student might purchase for classroom use.[14] The difficulties regarding the Establishment Clause evident in Meek and Marburger which involved massive loan programs are much different than those in the instant case where the effect of a possible tax deduction for the purchase of defined secular school materials is much more indirect.
 
 
 39
 The concerns of the Norberg court with church-state entanglement are well addressed by Judge Renner. He observed:
 
 
 40
 The Supreme Court has implicitly recognized that church-state contacts occasioned by normal tax administration procedures do not give rise to excessive and unconstitutional government and religion entanglements. See Walz, 397 U.S. at 674-76, 90 S.Ct. at 1414-15. Possible entanglement here is lessened by the fact that eligibility of schools is not determined by an in-depth case-by-case analysis of the genuineness of the schools' religious functions. Eligibility is clearly established if a school meets certain entirely secular requirements: nonprofit status, compliance with compulsory attendance laws, and adherence to state and federal civil rights statutes. While there may be times that certain deductions for textbooks or other specific expenses may call for an examination of impermissible purpose, the amount of entanglement will be minimal. Further, the primary enforcement tool will be an individual audit, which would not necessarily entangle the state impermissibly in church affairs. Plaintiffs fail to establish the reasonable likelihood that this section and any accompanying government regulation will involve intrusion into religious matters. Catholic Bishop of Chicago v. NLRB, 559 F.2d 1112, 1116 (7th Cir. 1977), aff'd, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979).
 
 
 41
 Mueller v. Allen, 514 F.Supp. 998, 1003 (D.Minn.1981).
 
 
 42
 Tuition.
 
 
 43
 We now turn to the more difficult issue of whether the tuition deduction has the primary effect of advancing religion.
 
 
 44
 The district court emphasizes that the statute is neutral on its face in that it provides a tax deduction for all parents of both public and nonpublic school children. This fact did not deter the Norberg courts from finding that the primary effect of the statute was to aid religion since Rhode Island's public school children attended schools tuition free. In so finding Judge Pettine of the District of Rhode Island observed, "93.4% of the children attending school in Rhode Island whose parents are eligible for the challenged tuition deductions attend sectarian schools." Rhode Island Federation of Teachers v. Norberg, 479 F.Supp. 1364, 1366 (D.R.I.1979).
 
 
 45
 Whether the Minnesota statute can withstand constitutional scrutiny turns on whether Nyquist can be distinguished. The Norberg court opined that it could not. We disagree.
 
 
 46
 The Nyquist Court struck down a direct tuition reimbursement of $50 to $100 per child available to parents with an annual taxable income of under $5,000[15] and a tax "credit" for families with an annual adjusted gross income of less than $25,000. The Court stated that the tax credit was, in form, "a tax deduction since it is an amount subtracted from adjusted gross income prior to computation of tax due." 413 U.S. at 789, 93 S.Ct. at 2974. However, the "deduction" was not related to the amount actually spent for tuition but was in the form of a predetermined amount of tax "forgiveness." Id. The Nyquist Court concluded:
 
 
 47
 In practical terms there would appear to be little difference, for purposes of determining whether such aid has the effect of advancing religion, between the tax benefit allowed here and the tuition grant allowed under § 2. The qualifying parent under either program receives the same form of encouragement and reward for sending his children to nonpublic schools. The only difference is that one parent receives an actual cash payment while the other is allowed to reduce by an arbitrary amount the sum he would otherwise be obliged to pay over to the State. We see no answer to Judge Hays' dissenting statement below that "(i)n both instances the money involved represents a charge made upon the state for the purpose of religious education." 350 F.Supp., at 675.
 
 
 48
 413 U.S. at 790-91, 93 S.Ct. at 2974-2975.
 
 
 49
 However, the Court specifically excepted from its ruling any decision as to whether a "genuine tax deduction" is constitutionally acceptable under the "neutrality" test in Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). 413 U.S. at 790 n.49, 93 S.Ct. at 2974 n.49. It is, of course, under that cloak of neutrality that defendants now argue.
 
 
 50
 In Nyquist it was urged that the fact that the New York tax credit was directed to the parent rather than to the schools was controlling. The Court, however, found that this distinction drawn from Everson and Allen was not determinative, that it was but one among many factors to be considered. 413 U.S. at 781, 93 S.Ct. at 2969-2970. A more significant factor that may be extrapolated from Allen and Everson is the fact that those cases dealt with benefits available to all school children, whereas the tax benefit in Nyquist was given only to those parents with children in private schools. The Nyquist Court emphasized the importance of the narrowness of the benefited class by comparing the beneficiaries under the New York statute to the broad class of intended beneficiaries in Walz. 413 U.S. at 794, 93 S.Ct. at 2976. Thus, the New York statute in Nyquist can be distinguished from the Minnesota and Rhode Island statutes on the following basis: (1) the statute in Nyquist operated as a tax credit, not as a true deduction; and (2) the tax benefits in Nyquist were limited to the class of parents of private school children, as opposed to the broad class of parents with dependents in both public and nonpublic schools benefited under the Minnesota and Rhode Island statutes.[16]
 
 
 51
 These two factors did not deter the court in Norberg from invalidating the Rhode Island law. The district court in Norberg found that the tuition deduction was still a charge upon the state. As the court said, it is "the economic equivalent of the state helping to provide for those expenses" and not "an abstention from taxation." The court viewed it more as a subsidy than as the exemption designed in Walz to minimize the involvement and entanglement between church and state. Norberg, 479 F.Supp. at 1371.
 
 
 52
 Second, the district court in Norberg found that the fact that in Rhode Island the statute was applicable to parents of public as well as nonpublic school students was "mere window dressing." 479 F.Supp. at 1371. In Rhode Island, the court observed, the overwhelming majority of the taxpayers eligible for the tuition deduction sent their children to sectarian schools. Id.
 
 
 53
 It is not without difficulty that we reach our decision to sustain the Minnesota law. First, we are concerned with the fact that we are dealing with an indirect state subsidy of tuition which can be viewed "as an incentive to parents to send their children to sectarian schools, or as a reward for having done so.... to preserve and support religion-oriented institutions." Sloan v. Lemon, 413 U.S. 825, 832, 93 S.Ct. 2982, 2986, 37 L.Ed.2d 939 (1973). We are well aware that we are not dealing with secular textbooks or bus rides[17] but with tax benefits for tuition payments to elementary and secondary institutions, some of which provide religious training along with secular education. Nonetheless, contrary to plaintiffs' argument, the Minnesota statute has not singled out a class of citizens for a special economic benefit. It is neutral on its face; and, under the facts presented here, we cannot reject this facial neutrality as mere window dressing. In Nyquist and Marburger the only eligible parents were those who send their children to nonpublic schools. In the present case Minnesota has recognized tuition deductions for parents of public school attendees who pay tuition in various forms, i.e., tuition paid by public school students who attend outside their residence districts; summer school tuition; tutoring services; tuition for instruction provided the physically handicapped; and tuition for driver education. Plaintiffs concede that some 14-18% of Minnesota taxpayers qualifying for tuition deductions under the statute do so for expenses related to private nonsectarian schooling. This figure however does not reflect the number of parents with dependents in public schools who collectively paid in 1978-79 in excess of two million dollars in tuition expenses.
 
 
 54
 In Nyquist each eligible taxpayer received an arbitrary deduction resulting in a definite tax benefit. In Norberg Rhode Island taxpayers' state income tax was directly related to a percentage of federal income tax and the amount of tax benefit from the challenged deduction depended upon the amount of the deduction and the federal income tax bracket. The court concluded that a tax benefit would result for any parent who owed federal income tax and paid tuition of dependents attending qualifying schools. It was estimated that eligible taxpayers in Rhode Island would receive an average tax benefit of $33 from the deduction. Such is not the case in Minnesota. Under the Minnesota statute the state tax is not related to federal income tax, and whether a parent obtains a tax benefit depends upon whether the deduction is sufficient to move the taxpayer from a higher tax bracket to a lower one. Thus, in this sense, the indirect tax benefit to the school is more diffused and less certain. Unlike the statute in Nyquist, there is within the Minnesota statute no "legislative attempt to assure that each family would receive a carefully estimated net benefit." Nyquist, 413 U.S. at 790, 93 S.Ct. at 2974.
 
 
 55
 Contrary to the Norberg reasoning, we find that the Minnesota deduction available to all citizens should be viewed much the same as a charitable deduction. See I.R.C. § 170. A statistical breakdown of beneficiaries is not necessary to conclude that the tax "foregiveness" provided in federal and state tax deductions for charitable contributions substantially benefits sectarian institutions. This creates a much greater, although indirect, subsidy of state and federal tax dollars to religious institutions than does a deduction for tuition payments to sectarian schools. Although the Supreme Court has never decided whether charitable deductions made available to all citizens are constitutional, we use the comparison merely to identify the imponderable problem presented if one is allowed to challenge a neutral statute made applicable to all citizens by a purely de facto analysis utilizing statistical proofs. The fundamental issue is not whether some or even a substantial benefit accrues to a religious institution, but whether the principal or primary effect of the statute is to advance religion. Tilton v. Richardson, 403 U.S. 672, 679, 91 S.Ct. 2091, 2096, 29 L.Ed.2d 790 (1971).
 
 
 56
 In Nyquist the statute limited the class benefited to the parents of children in nonpublic schools. The Court emphasized that "it should be apparent that in terms of the potential divisiveness of any legislative measure the narrowness of the benefited class would be an important factor." Nyquist, 413 U.S. at 794, 93 S.Ct. at 2976. Here, as in Everson and Allen, all citizens are made eligible for the tax benefits. One of the problems, however, in giving blind adherence to Everson and Allen is the fact that in both cases transportation and textbooks were not already furnished free by the statute to public school children. But what if they were? Would the amendment of the statute to include parochial students have been struck down as having been passed for religious purposes or having a primary effect of aiding religious schooling? We think not-at least under the Supreme Court's reasoning. State transportation in Everson was viewed as having a public purpose and fulfilling a public need. The mere fact that it coincided with individual desires to send children to a parochial school was deemed an inadequate reason to strike down the law.
 
 
 57
 There is no doubt that Minnesota could limit its tax deduction for tuition expenses to those parents in the public school system required to pay tuition. This could easily be deemed a public need-even though it would affect only a minority of taxpayers with dependents in the public school system. On the other hand, if a state wishes to extend such tax benefits "to all its citizens without regard to their religious belief," it should be allowed to do so. Everson, 330 U.S. at 16, 67 S.Ct. at 512. As the Supreme Court surmised in Roemer v. Board of Public Works, 426 U.S. 736, 746, 96 S.Ct. 2337, 2344, 49 L.Ed.2d 179 (1976), parents who send their children to sectarian schools "need not be quarantined from public benefits that are neutrally available to all."
 
 
 58
 Notwithstanding plaintiffs' statistical arguments, which arguably indicate that the greater number of the class benefited are parents of church school children, we find that there are substantial benefits flowing to all members of the public. By way of deduction we conclude, as defendants urge, that the State, in effect, abstains from taxing that income which has been denoted by a broad class of Minnesota citizens to their children's education. In so doing, the State has adopted a policy which is neutral toward religion by providing a tax benefit to those parents who qualify for a deduction for expenses incurred in sending their child to school.
 
 
 59
 Conclusion.
 
 
 60
 We have applied the three-pronged test of Lemon v. Kurtzman and hold that Minn.Stat. § 290.09, subd. 22, does not violate the Establishment Clause. We acknowledge that this case falls in the gray area lying between constitutionally-upheld tax exemptions, see Walz, and unconstitutional tax "credits," see Nyquist. We have weighed all the factors; and, while we recognize the bestowing of some benefit to church-affiliated schools, we also find that any benefit to religion or involvement between church and state is so remote and incidental that the challenged deduction does not violate the constitutional wall separating church and state. We find that the dangers of Minn.Stat. § 290.09, subd. 22, are quite far removed from those dangers which prompted inclusion of the Establishment Clause in the Bill of Rights. Justice Powell stated in his concurring opinion in Wolman v. Walter :
 
 
 61
 Our decisions in this troubling area draw lines that often must seem arbitrary. No doubt we could achieve greater analytical tidiness if we were to accept the broadest implications of the observation in Meek v. Pittenger, 421 U.S. 349, 366 (95 S.Ct. 1753, 1763, 44 L.Ed.2d 217) (1975), that "(s) ubstantial aid to the educational function of (sectarian) schools ... necessarily results in aid to the sectarian enterprise as a whole." If we took that course, it would become impossible to sustain state aid of any kind-even if the aid is wholly secular in character and is supplied to the pupils rather than the institutions. Meek itself would have to be overruled, along with Board of Education v. Allen, 392 U.S. 236 (88 S.Ct. 1923, 20 L.Ed.2d 1060) (1968), and even perhaps Everson v. Board of Education, 330 U.S. 1 (67 S.Ct. 504, 91 L.Ed. 711) (1947). The persistent desire of a number of States to find proper means of helping sectarian education to survive would be doomed. This Court has not yet thought that such a harsh result is required by the Establishment Clause. Certainly few would consider it in the public interest. Parochial schools, quite apart from their sectarian purpose, have provided an educational alternative for millions of young Americans; they often afford wholesome competition with our public schools; and in some States they relieve substantially the tax burden incident to the operation of public schools. The State has, moreover, a legitimate interest in facilitating education of the highest quality for all children within its boundaries, whatever school their parents have chosen for them.
 
 
 62
 Wolman v. Walter, 433 U.S. 229, 262, 97 S.Ct. 2593, 2613, 53 L.Ed.2d 714 (Powell, J., concurring in part, concurring in judgment in part, and dissenting in part).
 
 
 63
 The judgment of the district court is affirmed.
 
 
 
 [1]
 In an earlier suit the same statute withstood a similar constitutional attack before a three-judge court. M. C. L. U. v. Roemer, 452 F.Supp. 1316 (D.Minn.1978) (Alsop, J., dissenting). The district court ruled that this judgment was res judicata as to certain individual plaintiffs who were plaintiffs in the original action. Mueller v. Allen, 514 F.Supp. 998, 999 (D.Minn.1981)
 
 
 [2]
 Section 290.09, subdivision 22, provides for the following deduction from gross income in computing net income:
 Tuition and transportation expense. The amount he has paid to others, not to exceed $500 for each dependent in grades K to 6 and $700 for each dependent in grades 7 to 12, for tuition, textbooks and transportation of each dependent in attending an elementary or secondary school situated in Minnesota, North Dakota, South Dakota, Iowa, or Wisconsin, wherein a resident of this state may legally fulfill the state's compulsory attendance laws, which is not operated for profit, and which adheres to the provisions of the Civil Rights Act of 1964 and chapter 363. As used in this subdivision, "textbooks" shall mean and include books and other instructional materials and equipment used in elementary and secondary schools in teaching only those subjects legally and commonly taught in public elementary and secondary schools in this state and shall not include instructional books and materials used in the teaching of religious tenets, doctrines or worship, the purpose of which is to inculcate such tenets, doctrines or worship, nor shall it include such books or materials for, or transportation to, extracurricular activities including sporting events, musical or dramatic events, speech activities, driver's education, or programs of a similar nature.
 Minn.Stat.Ann. § 290.09, subd. 22 (West Supp.1982).
 The law providing deductions for tuition and transportation expenses was originally enacted in 1955 and later revised in 1976 and 1978.
 
 
 [3]
 The court below further determined that deductible transportation expenses included:
 (T)he cost of transporting students in school districts that do not provide free transportation, the cost of transporting students who live in one district but attend school in another, and the cost of transporting students who attend school in their residence district but who do not qualify for free transportation because of proximity to their schools of attendance.
 
 
 [514]
 F.Supp. at 1000
 
 
 [4]
 The district court found that textbook deductions include not only secular textbooks subject to these restrictions, but also certain requisite equipment, including:
 
 
 [1]
 Cost of tennis shoes and sweatsuits for physical education
 
 
 [2]
 Camera rental fees paid to the school for photography classes
 
 
 [3]
 Ice skates rental fee paid to the school
 
 
 [4]
 Rental fee paid to the school for calculators for mathematics classes
 
 
 [5]
 Costs of home economics materials needed to meet minimum requirements
 
 
 [6]
 Costs of special metal or wood needed to meet minimum requirements of shop classes
 
 
 [7]
 Costs of supplies needed to meet minimum requirements of art classes
 
 
 [8]
 Rental fees paid to the school for musical instruments
 
 
 [9]
 Cost of pencils and special notebooks required for class
 
 
 [514]
 F.Supp. at 1000
 
 
 [5]
 This mandate is made applicable to the states by the Due Process Clause of the fourteenth amendment. Murdock v. Pennsylvania, 319 U.S. 105, 108, 63 S.Ct. 870, 872, 87 L.Ed. 1292 (1943)
 
 
 [6]
 See Everson v. Board of Education, 330 U.S. 1, 8-16, 67 S.Ct. 504, 508-511, 91 L.Ed. 711 (1947) (Black, J.), 28, 28-41, 67 S.Ct. 517, 517-524 (Rutledge, J., dissenting), for a discussion of the history of the Establishment Clause. See also L. Tribe, American Constitutional Law 813-19 (1978). For the developments in this area involving religion and education, see, e.g., Giannella, Lemon and Tilton: The Bitter and the Sweet of Church-State Entanglement, 1971 S.Ct.Rev. 147 (1971); Giannella, Religious Liberty, Nonestablishment, and Doctrinal Development, 81 Harv.L.Rev. 513 (1968); Morgan, The Establishment Clause and Sectarian Schools: A Final Installment ?, 1973 S.Ct.Rev. 57 (1973)
 
 
 [7]
 This issue was raised at trial evidently to preserve the right of appeal, but no supporting evidence was proffered at that time
 
 
 [8]
 Plaintiffs urge that the effects of the transportation and textbooks deductions are de minimis and do not direct the primary effects portion of their argument at these components of the statute. As the court in M. C. L. U. v. Roemer, 452 F.Supp. 1316 (D.Minn.1978), stated:
 (S)ince the state can provide textbooks, Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), and transportation, Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), for parochial school students without offending the Establishment Clause, the statutory deduction for parental expenditures to purchase these items is constitutionally proper.
 
 
 [452]
 F.Supp. at 1318-19
 Defendants submit that, although the textbook and transportation components are constitutional, their effects are substantial with regard to the statistical evidence involving breadth of affected class.
 
 
 [9]
 Plaintiffs inform us in their brief that approximately 820,000 pupils attend public and nonpublic-nonsectarian schools in Minnesota. The record is silent as to this figure
 
 
 [10]
 The court in Public Funds for Public Schools v. Byrne, 590 F.2d 514 (3d Cir.), aff'd mem., 442 U.S. 907, 99 S.Ct. 2818, 61 L.Ed.2d 273 (1979), relied heavily on Nyquist in holding unconstitutional a New Jersey law providing a $1,000 tax exemption per dependent attending nonpublic schools only. The narrowness of the class and the arbitrariness of the tax relief were emphasized by the court
 
 
 [11]
 Norberg's distinction of Roemer is somewhat dubious. The stipulation in Roemer was deemed relevant only in conjunction with the textbook and transportation deductions. In discussing the textbook deduction in Roemer Judge Devitt observed:
 (T)he stipulation of facts recites only that some taxpayers who claim the deduction have dependents who attend parochial schools. Stipulation, P 8. Thus, the facts presented do not indicate that this facially neutral statute is being employed to primarily benefit parochial school students. Unlike the enactment challenged in Marburger, this statute "... merely makes available to all children the benefits of a general program ..." Board of Education v. Allen, 88 S.Ct. at 1926. Of course, this analysis only extends to plaintiffs' concessions with respect to textbooks and transportation. Facial neutrality is not controlling with respect to the forbidden forms of aid.
 M. C. L. U. v. Roemer, 452 F.Supp. 1316, 1319 n.2 (D.Minn.1978).
 
 
 [12]
 On appeal the First Circuit observed:
 The difficulty with this provision is not that the secular nature of the textbooks and instructional material for which deductions might be taken could not be guaranteed; it is that the involvement of church and state necessary to guarantee that result would excessively entangle church and state. See generally Surinach v. Pesquera de Busquets, 604 F.2d 73 (1st Cir. 1979). The district court correctly distinguished this case from those in which the state determines in advance of the purchase the secular nature of texts and instructional materials. We agree that continuing surveillance would be necessary to ensure that equipment which can be used for both secular and sectarian purposes, such as tape recorders and projectors, are used only for secular purposes.
 Rhode Island Fed'n of Teachers v. Norberg, 630 F.2d 855, 862 (1st Cir. 1980).
 
 
 [13]
 In this regard both cases develop little more than proofs of the percentage of parents who send their children to sectarian schools as related to all "eligible" parents who send their children to nonpublic schools. As the district court observed:
 (P)laintiffs project that at its theoretically broadest scope 14-18% of the taxpayers qualifying for a tuition deduction under the challenged statute do so by reason of expenses related to nonsectarian schooling. Defendants contend, however, that plaintiffs have incorrectly assumed that only full-time tuition payments are relevant and have ignored such items as tuition for summer school and for certain other courses such as driver's education that are also tax deductible. Thus, defendants argue, the number of students for whom tuition tax deductions are available is not limited to the 3,360 full-time nonsectarian students as suggested by plaintiffs. Further, the affidavit of Ronald Moir states that over two million dollars were paid in tuition expenses to public schools. Plaintiffs' failure to include these types of tuition deductions as well as a variety of other charges depreciates the significance of their figures and calculations. The defendants further contend the allowable deductions for textbooks and transportation are not de minimus (sic) and must be considered. That thus, on a factual basis, the statute in application satisfies even a broad constitutional test of neutrality.
 Mueller v. Allen, 514 F.Supp. 998, 1002 (D.Minn.1981).
 If a strict de jure analysis were advocated, one would be inviting legislatures to enact facially neutral statutes which could operate as mere sham. If a pure de facto approach were taken, a statute's constitutionality might turn on local annual statistics. That is, the same statute might be constitutional one year, and not the next, or in one state and not in another, depending upon the current statistical breakdown of sectarian and nonsectarian schools. Nothing so rigid or so arbitrary can be gleaned from precedent in this area.
 
 
 [14]
 Although a ruler might be used in a mathematics class, it might also be used to measure mileage on a biblical map. Tennis shoes might be worn to gym class as well as to a religious training period. We question whether such uses might be seriously challenged as aiding religion
 
 
 [15]
 See also Sloan v. Lemon, 413 U.S. 825, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973)
 
 
 [16]
 Defendants urge that the fact that the Minnesota statute has been unchallenged since 1955 is made relevant by the discussion of historical acceptance in Walz v. Tax Comm'n, 397 U.S. 664, 677-80, 90 S.Ct. 1409, 1415-1417, 25 L.Ed.2d 697 (1970) (Burger, C. J.). We disagree. As the district court noted in Norberg, "The Walz property tax exemptions were upheld not merely because of their long historical acceptance; rather, it was the reason underlying that history of tolerance that proved controlling." Norberg, 479 F.Supp. at 1371 n.9
 
 
 [17]
 Everson and Allen held that the provision of secular books and transportation to all citizens reflected a neutral posture toward religious institutions