Thomas R. d'ERRICO, Robert W. Olson, Harold A. Dickey, Zeno Wicks, Plaintiffs,

v.

John LESMEISTER, in his official capacity as Treasurer of North Dakota; and Robert O. Wefald, in his official capacity as Attorney General of North Dakota, Defendants.

Civ. No. A3–81–185.

United States District Court, D. North Dakota, Southeastern Division.

March 23, 1983.

Robert A. Feder, Co-op. Atty., Red River Valley Chapter, ACLU, Fargo, N.D., for

plaintiffs; Stephen L. Pevar, Staff Counsel, American Civil Liberties Union, Mountain States Regional Office, Denver, Colo., of counsel.

Robert O. Wefald, Atty. Gen., Nancy K. Hoff, Kathryn L. Dietz and Rick D. Johnson, Asst. Attys. Gen., Bismarck, N.D., for defendants.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

Plaintiffs, as citizens and taxpayers of North Dakota, challenge the constitutionality of North Dakota's Tuition Assistance Grant Program, North Dakota Century Code Chapter 15-62.3, as amended in 1981. Plaintiffs allege the assistance program as it applies to bible colleges violates the Establishment Clause of the first amendment to the United States Constitution as made applicable to the states by the fourteenth amendment. They seek declaratory and injunctive relief. The case is before the court on a stipulation of facts and cross motions for summary judgment.

### Facts

The Tuition Assistance Grant Program was enacted in 1979 and provided, *inter alia,* that "[a]ny full-time resident student or half-time resident student who is admitted to and attends an accredited private institution and who establishes financial need is eligible for a tuition assistance grant upon application to the agency." 1979 N.D.Sess.L. Ch. 269, § 3; N.D.Cent. Code § 15–62.3–03 (1981). Agency is defined as "state board of higher education." An accredited private institution was originally defined as "an institution of higher learning located in North Dakota which is operated privately and not controlled or administered by any state agency or subdivision of the state, and which is accredited by the north central association of colleges and secondary schools," 1979 N.D.Sess.L. Ch. 269, § 1. Mary College, Bismarck, North Dakota, and Jamestown College, Jamestown, North Dakota, are the only two institutions of higher learning in North Dakota that come within that definition. These colleges are operated under the auspices of the Catholic and Presbyterian churches, respectively.

In 1981, the definition of an accredited private institution was expanded to include institutions accredited by "the accrediting association of bible colleges," 1981 N.D. Sess.L. Ch. 228, § 1; *see also* N.D.Cent. Code § 15–62.3–01(1) as amended (1981).[1] The effect of the 1981 amendment was to make students attending Northwest Bible College in Minot and Trinity Bible Institute in Ellendale eligible for assistance in addition to students at Jamestown and Mary colleges. The two bible colleges are not accredited by the North Central Association of Colleges,[2] but are accredited by the American Association of Bible Colleges. The American Association of Bible Colleges has accredited approximately eighty bible colleges throughout the United States and Canada. The Association's criteria of accreditation is intended to "encompass most aspects of the operation of an institution with respect to both general features that should characterize all colleges and to those distinctive features that distinguish the Bible college program." Defined within the Association's accreditation criteria are "general objectives in the education of all students taking Bible College programs":

1. North Dakota Century Code section 15–62.3–01(1) as amended (1981) provides as follows:

"Accredited private institution" means an institution of higher learning located in North Dakota which is operated privately and not controlled or administered by any state agency or subdivision of the state, and which is accredited by the north central association of colleges and secondary schools *or the accrediting association of bible colleges.*

N.D.Cent.Code § 15–62.3–01(1) as amended (1981) (emphasis added to reflect 1981 amendment).

2. The North Central Association of Colleges is a secular accrediting association for public and nonpublic colleges in North Dakota, Arizona, Arkansas, Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, New Mexico, Ohio, Oklahoma, South Dakota, West Virginia, Wisconsin and Wyoming.

1. To cultivate Christian life and experience.
2. To inculcate a comprehensive knowledge of the Bible and an understanding of Christian doctrine.
3. To broaden and deepen the general education of students for effective living as Christian citizens and Christian workers.
4. To instill vital missionary vision and dedication to world-wide service.
5. In terminal programs, to prepare students to serve with competence in one or more spheres of Christian service; in preparatory programs, to provide readiness for related graduate studies.
6. To foster Christian culture in terms of refinement, appreciations, social attitude and skills.
7. To educate students in relation to health and Christian regard for the body.
8. To stimulate a desire for continued growth in these areas subsequent to campus experience.

Students who attend any of the four eligible colleges and seek state grant financial aid must apply directly to the North Dakota Board of Higher Education, a state agency. The agency determines the amount of any grant to be awarded and contacts the registrar of the student's college for certification of the student's enrollment status. The payment of the grant is made in the form of a check issued by the state agency in the name of the student. The check is forwarded to the appropriate college, which in turn distributes it to the student. There are no restrictions on the purpose for which the student may actually use the funds. Although the statute provides that a qualifying student may be awarded a grant in an amount up to $1,500, the program has never been fully funded so that students actually receive only a percentage of their need.[3] In 1982–83, fourteen students attending Trinity Bible Institute received grants in amounts varying from $220 to $280. In that same period, only one student attending Northwest Bible College received a grant, which was in the amount of $250. Plaintiffs contend the program is unconstitutional only as it applies to Trinity Bible Institute and Northwest Bible College.

Mary College and Jamestown College offer some courses in religion but a student's participation in religious activities is not required. Jamestown College offers a four year degree in art/business, biology, chemistry, computer science, fine arts, history-political science, and psychology. Mary College offers a four year degree in accounting, medical technology, radiological technology, respiratory therapy, social and behavioral sciences, social work, and special education. Both colleges offer a four year degree in business administration, elementary education, English, mathematics, nursing, and physical education and health.[4]

The parties have stipulated the basic purpose of Northwest Bible College is to prepare young men and women for service as pastors, Christian education directors, music directors in local churches, and as foreign missionaries. The college is an education arm of the Church of God and receives one-third of its income from the Church of God. The college prefers that its faculty are members of the Church of God and imposes religious restrictions on faculty teaching methods and course subject matter. Students attending Northwest are required to attend chapel services and complete a "Christian Service" program and/or basic Bible courses prior to taking a degree. Northwest Bible College offers a two year Associate of Arts degree and a four year Bachelor degree.

---

**3.** The North Dakota Legislature appropriated $200,000 for the program for the years 1979–81 and $400,000 for 1981–83.

**4.** The challenge in this case does not reach the state aid paid students attending Jamestown and Mary Colleges. From the record in the case, it appears those students were excluded because the education offered at Jamestown and Mary Colleges seems to be primarily of a secular nature which neither advances nor prohibits religion and does not foster excessive government entanglement.

Trinity Bible Institute is a sovereign institute having a "cooperative fellowship" with the Assembly of God Church. The institute's basic purpose is to train young men and women for Christian service through Biblical teaching. Trinity Bible Institute faculty are required to be Christians and to subscribe to certain "fundamental truths." Students attending the institute are required to attend chapel services and take Bible courses. The institute offers a two year Associations of Arts degree in business, a three year diploma in Christian Ministries, and four year Bachelor of Arts degree in Biblical Studies. A major is also offered in elementary education, the completion of which enables a graduate to be state certified to teach in North Dakota public elementary schools. Both schools inquire into the religious background of students applying for admission. Northwest Bible College's applicants are asked to state their church denomination, whether the applicant is born again, and to briefly describe their relationship with Christ. Trinity Bible Institute applicants are asked to state their church membership, when the applicant became a Christian, whether they have ever backslidden and been reclaimed, and whether they have been baptized in water by immersion. Applicants at both institutes are asked to list a pastor as a reference.

*Applicable Law*

The first amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The fourteenth amendment has made the first amendment religious guarantees applicable to the states, *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). "The purposes of the First Amendment guarantees relating to religion were twofold: to foreclose state interference with the practice of religious faiths, and to foreclose the establishment of a state religion familiar in other Eighteenth Century systems," *Larkin v. Grendel's Den, Inc.,* ── U.S. ──, 103 S.Ct. 505, 510, 74 L.Ed.2d 297 (1982).

A law may be one respecting an establishment of religion even though its consequence is not to promote a state religion, *see Committee for Public Education & Religious Liberty v. Nyquist,* 413 U.S. 756, 771, 93 S.Ct. 2955, 2964, 37 L.Ed.2d 948 (1973); *Mueller v. Allen,* 676 F.2d 1195, 1197 (8th Cir.), *cert. granted,* ── U.S. ──, 103 S.Ct. 48–49, 74 L.Ed.2d 55 (1982). However, a law that indirectly benefits religion or religious institutions is not invalid per se. The Eighth Circuit Court of Appeals has recently summarized cases where such laws have been found constitutional:

> *See, e.g. Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977) (law providing loan of textbooks purchased with state funds and provision of diagnostic services to nonpublic schools upheld); *Hunt v. McNair,* 413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973) (law providing aid to church colleges through revenue bonds for construction upheld); *Tilton v. Richardson,* 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971) (law providing grants to church colleges for construction of buildings used for secular purposes upheld); *Walz v. Tax Commission,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) (law providing real estate tax exemptions to churches upheld); *Board of Education v. Allen,* 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968) (law providing for loan of state textbooks to nonpublic schools upheld). *See also Widmar v. Vincent,* [454] U.S. [263], 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (Establishment Clause does not preclude use of state university facilities by registered student religious organization).

*Mueller v. Allen, supra* at 1197–98. Additionally, in *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), the Supreme Court upheld a state program providing for the reimbursement of student bus fares to parents of children attending elementary and secondary schools, without regard to whether the schools are public, private, sectarian, or nonsectarian.

To withstand an Establishment Clause challenge a statute must meet three criteria:

First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . .; finally, the statute must not foster "an excessive government entanglement with religion."

*Larkin v. Grendel's Den, Inc., supra, quoting Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). A statute which fails to meet any one of these requirements is unconstitutional, *see e.g., Meek v. Pittenger,* 421 U.S. 349, 363 n. 13, 95 S.Ct. 1753, 1762 n. 13, 44 L.Ed.2d 217 (1975); *Ring v. Grand Forks Public School District,* 483 F.Supp. 272 (D.N.D.1980).

Defendants assert that because the grant funds are given directly to the student and may be used for unrestricted purposes, the state is not supporting religion. Defendants rely primarily on the holding in *Americans United for the Separation of Church and State v. Blanton,* 433 F.Supp. 97 (M.D. Tenn.) (three judge court), *aff'd,* 434 U.S. 803, 98 S.Ct. 39, 54 L.Ed.2d 65 (1977) (affirmed without opinion, Brennan, Marshall & Stevens, JJ. would have noted probable jurisdiction and set case for oral argument). In *Blanton,* plaintiffs challenged Tennessee's Student Assistance Program alleging it violated the Establishment Clause. The Tennessee program provided for the payment of state funds directly to needy students to attend the accredited college of their choice in Tennessee. A student receiving such aid could attend a public college or university, a public vocational or technical institute, or a nonpublic college or university accredited by the Southern Association of Colleges and Schools, *id.* at 99. A recipient student could use the funds for any educationally related expenses, including, *inter alia,* room rent, bus fare, clothing, and health care expenses. The *Blanton* court found that the emphasis of the aid program was on the student rather than the institution, private or religious institutions were not favored over public institutions,

and no one religion was favored by the program. The court held that under those findings, the Tennessee program was constitutional on its face and as applied, *id.* at 104–05.

█ Plaintiffs assert, and the court agrees, that the Tennessee program is significantly distinguishable from the North Dakota program. Both programs direct the aid to the student, but the similarity ends there. The North Dakota statute as amended (1981) to provide state financial aid to students attending private institutions accredited by "the accrediting association of bible colleges" is quite different from the Tennessee Act, and violates all three prongs of the *Lemon v. Kurtzman* criteria. The amendment on its face and as applied clearly advances religion, has destroyed the statute's secular legislative purpose, and fosters excessive government entanglement with religion. By providing state funds to students attending bible colleges accredited by the accrediting association of bible colleges without identifying the accrediting association commits the state to extend financial aid to a private sectarian school if it has been accredited by an association that accredits bible colleges.[5] The net effect is that students attending two sectarian religious schools in North Dakota operated for express religious purposes are receiving state financial assistance. There is no judicial precedent approving such a program. *See Committee for Public Education & Religious Liberty v. Nyquist, supra.*

North Dakota law provides that in the event any clause, sentence, paragraph, chapter, or other part of any title is adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, nor invalidate any other clause, sentence, paragraph, chapter, section or part of such title, N.D.Cent.Code § 1–02–20 (1975).

---

**5.** No rules or regulations have been adopted by the state agency setting standards to be met prior to extending state aid.

The sole question presented to the court in this case relates to the constitutionality of the 1981 amendment. The court holds and declares that portion of N.D.Cent.Code chapter 15–62.3 which provides for state financial aid to students attending a private institution of higher learning accredited by the accrediting association of bible colleges to be unconstitutional and void on its face and as applied.

IT IS ORDERED that judgment be entered accordingly.